## CHICAGO DEPOSIT VAULT COMPANY *v.* McNULTA.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 345. Submitted April 24, 1894. — Decided May 14, 1894.

A receiver of a railroad, appointed with authority "to make all contracts that may be necessary in carrying on the business of said railroad, sub-

ject to the supervision of this court," has no authority to make a lease for a term of general offices, without authority from the court, and to bind his successors and the property therefor for the term, without direction from or sanction by the court.

The facts that the receiver's accounts showed, monthly, the payment of the rent under such a lease, and that that rent was reasonable, and that the accounts as rendered were passed by the master and reported to and approved by the court, do not amount to a sanction of the lease for the term.

CHARLES H. BEERS, as the holder of certain bonds of the Wabash, St. Louis and Pacific Railroad Company, secured by a mortgage or trust deed on the Chicago division of that road, in 1886 filed a bill on behalf of himself and others in the Circuit Court of the United States for the Northern District of Illinois for the purpose of foreclosing the mortgage, and prayed that pending the rendition of the decree in the cause the court would appoint some disinterested and practical person receiver of all the mortgaged property, equipment, and appurtenances to hold and administer the same, and disburse the revenues and income thereof under the orders of the court from time to time to be entered in the cause.

On December 16, 1886, the court appointed Thomas M. Cooley receiver of the mortgaged property. The order appointing the receiver contained among other things the following: " And the said receiver is hereby empowered and instructed to take possession of all of the said property described in said mortgage or appurtenant thereto, and to manage, control, and operate the said railroad described in said mortgage, preserve and protect all said property, and collect, as far as possible, all assets, choses in action, and credits due to said company, acting in all things under the orders of this court. . . . Said receiver shall also have authority, subject to the supervision of the court, to make such repairs to said railway and property as are necessary in his judgment for carrying on the business thereof, and also to make all contracts that may be necessary in carrying on the business of said railroad, *subject to the supervision of this court*. . . . It is further ordered that the said receiver, out of the income which shall come into his hands by the

operation of said railroads or otherwise, proceed to make payments as follows: That he pay all current expenses incident to the creation or administration of his trust and to the operating of said railroad; That he pay all amounts now legally due or that shall hereafter become due for taxes on any of the property over which he is appointed receiver; That he pay all balances due or to become due to other railroads or transportation companies on balances growing out of the exchange of traffic with such railway accruing six months prior hereto; . . . That he pay all rentals to become due upon rolling stock heretofore sold to said railroad company and partially paid for and necessary for use in the operation of the road over which the said receiver is appointed, covered by the mortgage described in the bill herein, and which come into the hands of the receiver under the operation of this order."

The order further directed that after discharging and making all the payments and outlays required by the terms of the order the receiver should retain any surplus remaining in his hands to be applied to the payment of the past due and matured interest coupons secured by the mortgage.

The receiver qualified and took possession of the mortgaged property, and on December 31, 1886, entered into a contract with the Chicago Deposit Vault Company for the lease of rooms 523 to 547 inclusive in the Rialto Building in the city of Chicago, for his use as receiver in the transaction of the business of the railroad. The term of the lease was from January 1, 1887, to April 30, 1891, a period of four years and four months, at a yearly rental of $10,500, payable in instalments of $875 monthly in advance. There was a provision in the lease that the receiver might cancel it on May 1, 1888, by giving notice to that effect on or before February 1, 1888.

Cooley, as receiver, took possession of the rooms and continued to occupy them until his resignation in April, 1887, paying the stipulated rent regularly during that time, for which he took credit in his reports of receipts and disbursements. The monthly items of rent were entered in the

receiver's reports under the heading of "operating expenses" as "rent of general offices." These reports were regularly approved by the court.

Upon Cooley's resignation the court appointed John McNulta as his successor, who took possession of the rented premises and continued to occupy them and pay the stipulated monthly rental until July 31, 1889. Receiver McNulta made his reports of receipts and disbursements in the same form as those made by his predecessor, and they were from time to time approved by the court.

The mortgaged property was sold under foreclosure decree and purchased by James F. Joy, Ossian D. Ashley, Thomas H. Hubbard, and Edgar T. Welles as a purchasing committee. The sale and purchase having been confirmed, the court on June 20, 1889, entered an order directing receiver McNulta on or before July 1, 1889, to turn over all the property in his possession as receiver to the purchasing committee. This order contained the following provision: "But this order is made, and the surrender and delivery of possession by the receiver shall also be made, . . . subject also to the power and right of this court to consider and determine all questions which have heretofore arisen or shall hereafter arise herein concerning expenses of this cause or of the receivership herein, concerning claims against said receiver or against any of the property now in his possession as receiver, and concerning allowances to counsel or to parties, and to charge upon or against said property any amounts at any time deemed by this court proper to be charged upon it, and this court hereby reserves full power and right to consider and determine all such questions, to make any charges which it deems proper against said property now in the possession of said receiver, notwithstanding the surrender thereof, and to resume possession of all or any of said property, if necessary, at any time hereafter, and to place said property again in the possession of a receiver, and to resell or otherwise dispose of the same for the purpose of securing compliance with any orders which it shall make in this cause."

On June 27, 1889, McNulta, as receiver, gave notice to the

Chicago Deposit Vault Company that he would not need the leased rooms after August 1, 1889, and that on July 31, 1889, he would surrender possession of the premises to the lessor. The rent was paid by McNulta up to the latter date, when he vacated and gave up possession of the premises.

The Chicago Deposit Vault Company on June 29, 1889, filed an intervening petition in the foreclosure suit of Beers, setting up the execution of the lease ; the taking possession and occupancy of the rooms under it by the receivers Cooley and McNulta, and the payment of the monthly rental therefor during the period of such occupancy. The petition also set out the notice given by McNulta, receiver, of his intention to surrender possession of the rooms, and that he would cease paying rent after July 31, 1889. The petition insisted that the receiver had no right to surrender the lease ; that it would be unjust and inequitable, and prayed that he might be restrained from so doing, and that the purchasers of the mortgaged premises at the foreclosure sale should be required to abide by and perform the terms of the lease ; that an adequate fund out of the trust assets should be retained in the court to assure the payment of the rent thereafter to accrue, and that the same be applied to the payment of such rent.

To this intervening petition the receiver and the purchasers filed an answer, which, after admitting the execution of the lease by Cooley, as receiver, averred that he had no power, without the approval of the court, to bind the court or the funds of the receivership beyond the time the premises should be required by the receiver, and that the lease was properly terminated by the last receiver's notice. The answer further stated that on July 1, 1889, the receiver, under and in pursuance of the order of the court of June 20, 1889, had turned over all the property to the purchasers at the foreclosure sale.

An amended petition, filed by the intervenor on April 5, 1890, set forth that $7875 had accrued as rental under the lease since the filing of its original petition, and repeated substantially the same prayer for relief.

Proof was made of the execution of the lease, possession of the premises by the two receivers, payment of the monthly

rental by them, and the approval of their accounts by the court, showing such payment. It was also shown by the petitioner that the rental agreed upon was as reasonable as the receiver could have secured elsewhere.

The monthly reports made by the respective receivers, which show, under the head of "operating expenses," the payment of certain sums as "rent for general offices," did not disclose to the master by whom the reports were examined, or to the court, that the lease had been made by the first receiver, or that the second receiver (McNulta) had occupied the rooms thereunder.

Upon the hearing the court dismissed the petition on the following grounds: "The order appointing the receiver was not broad enough to authorize him to enter into the contract of lease, and the lease was never reported to or confirmed by the court. It is true that from time to time the receiver's accounts, embracing payments of rent under the lease, were submitted to the master and passed by him, and the master's reports approved by the court. That, however, was not such a confirmation of the lease as concluded the court. Any contract entered into by the receiver not authorized by the order of appointment, and not subsequently confirmed by an order of the court, ended with the termination of the trust. The intervening petition is dismissed, each party paying half the costs."

From this decree the present appeal is prosecuted by the intervenor and the following errors are assigned for its reversal: (1) The court erred in holding that the order appointing the receiver did not authorize him to enter into the contract of lease in controversy; (2) in holding that such lease was never reported to or confirmed by the court; (3) in holding that the action of the court and the master in chancery upon the receiver's reports and accounts was not a sufficient confirmation of such lease; (4) in holding that the equities were with the defendants to the intervening petition; (5) and in ordering and decreeing that such petition be dismissed, and in not granting the relief prayed for in said petition.

*Mr. George L. Paddock* and *Mr. Hiram T. Gilbert* for appellant.

I. The lease was a contract proper for the receiver to make, and one which, if brought to the attention of the court when it was made, would not have been disapproved.

II. The lease was valid, in the absence of an express disapproval by the court. *Cowdrey* v. *Railroad Co.*, 1 Woods, 336; *Vanderbilt* v. *Central Railroad Co.*, 43 N. J. Eq. 669; *Field* v. *Herrick*, 101 Illinois, 110.

III. Even if the receiver exceeded his authority in making the lease, it was rendered valid by subsequent ratification by the court. *Supervisors* v. *Schenck*, 5 Wall. 772; *Smith* v. *United States Express Co.*, 135 Illinois, 279, 280; *Fisher* v. *Attleborough School District*, 4 Cush. 494; *Cowdrey* v. *Railroad Co.*, 1 Woods, 331, 336; *Drakely* v. *Gregg*, 8 Wall. 242; *Stark* v. *Starr*, 94 U. S. 477; *Connett* v. *Chicago*, 114 Illinois, 233, 239; *Ward* v. *Williams*, 26 Illinois, 447, 451; *S. C.* 79 Am. Dec. 385; *Harrod* v. *McDaniels*, 126 Mass. 413; *Whitbread* v. *Jordan*, 1 You. & Coll. (Exch.) 303.

IV. The parties interested in the foreclosure suit, the purchasers, the receiver, and the court itself, are estopped from insisting upon the invalidity of the lease. *Rogers* v. *Burlington*, 3 Wall. 654; *Ottawa* v. *First Nat. Bank*, 105 U. S. 342; *Anderson County* v. *Beal*, 113 U. S. 227.

V. The lessor is entitled to the payment of the rent stipulated in the lease.

*Mr. Wells H. Blodgett* for appellees.

Mr. Justice Jackson, after stating the case, delivered the opinion of the court.

The proof fails to show, as said in the opinion of the court below, that the lease was ever reported to or confirmed by the court. The receiver's reports which were approved by the court did not disclose the fact of the existence of the lease, or its terms and provisions, in such manner as to make the court's approval of the reports a confirmation of the lease.

The question then remains whether the order appointing the receiver conferred upon him the requisite authority to

enter into a contract of lease, involving a large annual expenditure, and extending beyond the receivership so as to make the contract a proper charge against the trust property under the administration of the court?

While there is some want of harmony in the authorities upon the question as to how far a receiver may make and enter into contracts without the previous approval or subsequent ratification of the court, which shall be binding upon the trust, we are of opinion that the order appointing the receiver in this case was not broad enough in its terms to authorize him to enter into the lease in question so as to give it validity without the approval or confirmation of the court.

It is undoubtedly true that a receiver, without the previous sanction of the court, manifested by special orders, may incur ordinary expenses or liability for supplies, material, or labor needed in the daily administration of railroad property committed to his care as an officer of the court; but it seems equally well settled that the courts decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays, or contracts extending beyond the receivership, and intended to be binding upon the trust. The receiver being an officer of the court, and acting under the court's direction and instructions, his powers are derived from and defined by the court under which he acts. He is not such a general agent as to have any implied power, and his authority to make expenditures and incur liabilities — like the one in question — must be either found in the order of his appointment, or be approved by the court, before they acquire validity, and have any binding force upon the trust.

In *Cowdrey* v. *Galveston, Houston &c. Railroad*, 93 U. S. 352, it was held that a receiver is not authorized, without the previous direction of the court, to incur any expenses on account of property in his hands, beyond what is absolutely essential to its preservation and use, as contemplated by his appointment. Accordingly, the expenditures of a receiver to defeat a proposed subsidy from a city, to aid in the construction of a railroad parallel with the one in his hands, were properly disallowed in the settlement of his final account,

although such road, if constructed, might have diminished the future earnings of the road in his charge.

This same general principle is recognized in *Union Trust Co.* v. *Illinois Midland Co.*, 117 U. S. 434, 479, where debts for considerable sums of money, borrowed by the receiver without previous authority from the court, were not allowed any priority out of the trust fund, although the moneys borrowed were applied to pay expenses of the receivership, such as supplies, repairs, and pay-rolls, and to replace moneys which had been so applied, for the reason that no order of the court had been obtained to borrow funds for those purposes.

In *Lehigh Coal and Navigation Co.* v. *Central Railroad*, 35 N. J. Eq. 426, it was said that "the receiver may undoubtedly appropriate moneys in his hands, belonging to the trust, to such purposes connected with the trust as he may think proper, always taking the risk that the court will finally approve his action; but he has no authority to bind the trust by contract without the authority of the court. Until his contracts are approved and ratified by the court the court is at liberty to deal with them as to it shall appear just, and may either modify them or disregard them entirely. . . . All persons dealing with receivers do so at their peril, and are bound to take notice of their incapacity to conclude a binding contract without the sanction of the court."

This states the correct rule upon the subject, especially in respect to contracts involving large outlays, and which may extend beyond the life of the receivership. The same general rule is stated in Beach on Receivers, section 257, as follows: "But a receiver is not allowed to exercise his discretion in applying the funds in his hands. These he holds strictly subject to the direction of the court, and only to be disposed of upon its order. Neither can he enter into contracts without the approval of the court. Although, as receiver, he may enter into negotiations and make such agreements as would be binding upon him as an individual, yet, in order to affect the fund in his hands his acts must be ratified by the court. This rule is so well established that it has been decided that all persons contracting with a re-

ceiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their own peril, and that the court has unquestioned power to modify or even vacate his agreements." To the like effect is a statement of the rule made in section 186 of High on Receivers.

What was said by Mr. Justice Bradley in *Cowdrey* v. *Railroad Company,* 1 Woods, 331, 336, and by the court in *Vanderbilt* v. *Central Railroad,* 43 N. J. Eq. 669, cited and relied on by the appellant, does not conflict with the general principle laid down in the authorities above referred to.

In respect to contracts which have been completely performed by a party dealing with a receiver, and when the claim is merely for compensation, equitable relief is often granted, although there was no previous approval or subsequent ratification of the receiver's act. This is pointed out by the chancellor in *Vanderbilt* v. *Central Railroad, ubi-supra.*

In the case under consideration the intervening petitioner has been fully paid for the time that its premises were occupied for the benefit of the trust. The receiver not only had no authority to contract beyond that time, but by the order of his appointment his expenditure of the funds was limited and confined to designated objects and purposes. Under these circumstances the court was not bound to recognize any equitable right of the intervening petitioner to be paid for the unexpired term of a lease, which had no legal validity.

The position taken on behalf of the appellant that there was a confirmation of the lease growing out of the fact that the receiver's expenditures in the way of rental for general offices were approved, cannot be sustained. If the doctrine of ratification could be invoked, it would have no application in the present case, because there was no knowledge on the part of the court prior to the filing of the intervening petition that such a lease had been entered into by its receiver; and in respect to the remaining contention of the appellant, that the court and the purchasers under the foreclosure sale were estopped from denying the lease, there is nothing in the record on which to predicate such a proposition, even conceding that the doctrine of estoppel could be applied to courts.

Under the order of June 20, 1889, directing the receiver to turn over the property to the purchasers at the foreclosure sale, the court undoubtedly had the authority to charge the property with such claims against the receiver as it might thereafter allow, but that reservation of power did not make it the duty of the court to allow the claim of the intervening petitioner.

The lease having no legal validity without the sanction of the court, the equitable considerations in favor of the purchasers of the trust property at the foreclosure sale are stronger than those of the appellant.

We are, therefore, of opinion that there was no error in the decree of the court below, and the same is accordingly

*Affirmed.*