### BRAMAN v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

#### No. 1,555.

1. RECEIVER—COMPENSATION—REVIEW BY APPELLATE COURTS.
   Appellate courts will not interfere with the discretion of the courts below in fixing the compensation of receivers and their counsel unless it has been abused.

2. SAME—AMOUNT OF COMPENSATION.
   Twelve thousand dollars was a reasonable compensation for two years' service as receiver of a Kansas railroad, only 60 miles in length, the volume of whose business was small, and the road itself operated during most of the receivership by a lessee, who was entitled to all the earnings, where the receiver resided in Massachusetts, and was only in Kansas on a few occasions, and where his services were confined to issuing receiver's certificates and negotiating them when he could find a purchaser.

3. SAME—ALLOWANCE FOR HOTEL BILLS.
   A claim of $2,952 for hotel bills, claimed to have been paid by the receiver while in New York on receivership business, was properly disallowed, as an unnecessary outlay.

4. SAME—RENT OF OFFICES.
   The receiver ought not to have rented an office in New York without the express sanction and approval of the court.

Appeal from the Circuit Court of the United States for the District of Kansas.

J. D. McFarland and George H. Whitcomb, for appellant.
Charles Blood Smith, W. H. Rossington, and Clifford Histed, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case arose out of an action to foreclose a mortgage, executed by the St. Louis, Kansas & Southwestern Railroad Company, that was brought by the Farmers' Loan & Trust Company, as trustee in the mortgage, on November 27, 1896. It is a companion case to the one recently decided by this court entitled "Farmers' Loan & Trust Co. v. Francis S. Eaton et al.," 114 Fed. 14, in which we had occasion to consider whether Eaton, the appellee in the latter case, who had leased the property of the aforesaid railroad company from Braman, the present appellant, who was receiver of the property, appointed as such in the foreclosure proceedings, was entitled to damages because he was ousted from possession before the natural termination of his lease. In this case the parties litigant are represented by the same counsel, but Braman, the receiver, is complaining because the lower court did not award him such compensation for his services as receiver, and for his disbursements in that capacity, as it ought to have allowed.

On October 22, 1898, the property of the aforesaid railroad company was sold under a decree of foreclosure, and the day previous Braman, as receiver, filed what he termed an account of his receipts and disbursements, but no vouchers accompanied such report. He had never before, as it seems, filed any such account in the court by which he was appointed as receiver. A few days later the Farmers' Loan & Trust Company filed exceptions to this account, accompanied by a request that the receiver be ordered and directed to file a further and correct report or account. Thereafter, on November 23, 1898, he did file a further amended account of receipts and disbursements, which was also excepted to by the trust company. These two accounts, and the exceptions thereto, were referred to a master for hearing and report, and, after considerable testimony had been heard, the receiver, of his own volition, seems to have filed another supplemental account, which was exhibited some time in April, 1899, and was immediately excepted to by the trust company. This latter supplemental account, which was filed after the hearing before the master had commenced, was the only one that appears to have been accompanied with any vouchers. After these three accounts of the receiver had undergone judicial scrutiny at great length before the master, and before the lower court on exceptions to the master's report, it seems that various sums, aggregating $11,346.58, which the receiver claimed as credits, either for services rendered as receiver or for disbursements in that capacity, were disallowed, and it was because of such disallowances that the present appeal was taken. The total sum allowed by the lower court for services and disbursements amounts to $16,699.81. No question of law is presented by the appeal, but this court is asked to review the evidence adduced before the master, and to decide that both the lower court and the master have erred in fix-

ing the value of the receiver's services and in rejecting certain claims for alleged expenditures which are said to have been incident to the proper administration of the trust.

We observe, in the first place, that appellate courts are very much ·disinclined to interfere with the exercise, by courts of first instance, of such a discretionary power as is involved in fixing the compensation of receivers and their counsel. The lower court usually has better knowl-·edge of what services such officers have actually rendered, and better means of determining how valuable such services have been to the trust, and what is a reasonable compensation therefor, than an appellate tribunal can have. For these reasons they are reluctant to disturb the action which has been taken in such matters, by a court of first instance, and will not do so unless there has been an abuse ·of discretion which has led to an allowance that is manifestly excessive ·or too small. Our observation leads us to believe that courts are not prone to make allowances for the services of receivers and counsel ·that are too small. If they err, it is usually in the other direction. Trustees v. Greenough, 105 U. S. 527, 536, 537, 26 L. Ed. 1157; Southern California Motor Road Co. v. Union Loan & Trust Co., 12 C. C. A. 215, 64 Fed. 450; Whitney v. City of New Orleans, 4 C. ·C. A. 521, 525, 54 Fed. 614; Trust Co. v. McClure, 24 C. C. A. ·64, 78 Fed. 209. The largest disallowed item in the receiver's account was a part of his claim for compensation. He claimed compensation for his services as receiver at the rate of $1,500 per month, a sum aggregating $18,000 per year, and succeeded in finding one witness who, upon the receiver's statement of the character of his own services, valued them at the rate of $25,000 per annum, for acting as receiver of a road which was only 60 miles in length, the volume of whose business was small, and which was in fact operated, during most of the period of the receivership, by. a lessee, who, by the terms of his lease, was entitled to all the earnings of the property. The master disregarded the opinion of the latter witness, and allowed the receiver compensation for his services at the rate of $3,000 per year, but, ·on exceptions to his report, the lower court allowed him, in full for his services, which covered a period of about two years, the sum of $12,000. We feel confident that no injustice was done to the receiver by this allowance. It was as liberal as he had any reason to expect. unless he expected to receive largely more than he had earned. He was ·appointed receiver in November, 1896; the road was sold, and the sale ·confirmed to the purchaser, on December 22, 1898. From some time in February or March, 1897, until the road was sold and the purchaser ·took possession, it was operated by Eaton, as lessee, who had full charge of the same. The receiver was a broker, who resided in Boston, Mass. He does not appear to have been in Kansas, where this short piece of road was located, except on a few occasions, during the receivership, and his services as receiver seem to have been confined to issuing receiver's certificates and negotiating them when he could ·find a purchaser. The master, in his report, remarks "that the finan-·ciering done by Braman as receiver, in regard to the property of the St. Louis, Kansas & Southwestern Railroad Company, does not appear ·to have been of such a high character as to justify the estimate

placed thereon by Baldwin," who was his principal witness.   We fully concur in that view.   His services in financiering the property do not appear to us to have been very important or very beneficial to the trust committed to his charge.   In view of all the circumstances, we are satisfied that the allowance made by the lower court to the receiver for his services was fully as large as it ought to have been, and that he has no fair pretense for complaint on that score.

Another large item in the receiver's account which was disallowed is the sum of $2,952.54, for hotel bills which he claimed to have paid in New York while he was in that city, necessarily, on business connected with the receivership.   The master disallowed various alleged expenditures, making up the above sum in the aggregate, on the ground that there was nothing in the testimony to show the reason or necessity of such expenditures on the part of the receiver.   We entirely agree with that conclusion of the master, and are fully persuaded that these expenditures were not made solely for the benefit of the trust, and that, if they were so made, they were unnecessary expenditures, and ought to be disallowed for that reason.   Operated, as this road was, by a lessee, and being a small local road in an impoverished condition, we can conceive of no reason why the receiver should be living, at the expense of the property, in the city of New York, 1,500 miles distant from the property.   The necessity of conferring with other railroad companies and being near their principal offices strikes us as being a poor excuse for such outlays.   Nor do we regard it as a sufficient reason for the allowance of these hotel bills, or a part of them, that the master did allow the receiver for office rent in the city of New York up to July 1, 1897, when the Eaton lease took effect, since we are of opinion that, in view of all the circumstances, this latter expense for office rent was entirely unnecessary; but, as no appeal was taken from the latter allowance, it will be permitted to stand. Certain it is that the receiver should not have rented this office in New York without the express sanction and approval of the court, which was not obtained.   Vault Co. v. McNulta, 153 U. S. 554, 14 Sup. Ct. 915, 38 L. Ed. 819.

Complaint is made because the master and lower court disallowed the sum of $3,000 which the receiver claimed to have paid to an attorney in New York for legal services rendered to him as receiver. The facts attending this transaction appear to be that Roger Foster, an attorney residing in New York, presented to the receiver a bill in the sum of $6,000, which appears to have been a bill for legal services rendered at the instance of the receiver in various matters, some of which had no legitimate connection with the receivership. The receiver says that he paid this bill with the proceeds of discounted receiver's certificates, and charged $3,000 to the account of the St. Louis, Kansas & Southwestern Railroad Company.   The master found that the services rendered in behalf of the latter company, by the attorney in question, were not worth to exceed $1,000, which sum was allowed, and in that view we concur.   This transaction, as explained by the receiver, is on its face exceedingly sus-

picious, and we very much doubt whether he should have received any allowance on account of money paid to the attorney.

Exceptions are alleged to various other disallowances, but we do not deem it necessary to speak of them in detail, although they have each been carefully examined. We find no occasion to disturb the action of the lower court as respects any of them. As the master well remarks, "Braman never kept any books in the ordinary acceptation of the term;" that is, books showing in detail his receipts and expenditures on account of the trust, as it was his plain duty to have done. His accounts were kept mainly in memorandum books and bank book stubs, and his vouchers consist in part of receipts and in part of his own checks, drawn to cover items contained in his reports. Because of his failure to keep proper accounts, the master observes that, "It was with great difficulty that anything could be sifted out from it which would aid, * * * to any great extent, in arriving at a proper conclusion." The receiver seems to have acted upon the theory that he could manage the property committed to his charge as if it was his private property, and not a public trust, keeping no accounts other than such as he found it convenient to keep for his private information. For that reason, if the rule applicable to such cases was strictly applied, he could be denied any compensation for his services. The master, however, took a more liberal view, resolving, as he says, every question in favor of the receiver, when he was in doubt whether an item claimed as an expenditure should be allowed or disallowed. We have no doubt that the allowances made in behalf of the receiver, both for compensation and for expenditures, were fully as great as they ought to have been, and the order made below is accordingly affirmed.