DELBRIDGE and another, Respondents, vs. KAUKAUNA FIBRE
COMPANY and others, Respondents, and another, Appel-
lant.

*April 6—April 24, 1917.*

*Receivers: Powers: Contracts extending beyond receivership: Ter-
mination by court: Rights of action thereon.*

1. The discretion of a receiver in the administration of his trust is
   so limited that he cannot tie up the trust estate or prevent the
   court from enforcing an administration thereof in such man-
   ner as to protect the best interests of the trust; and all parties
   dealing with him are charged with knowledge of these limita-
   tions on his power and deal with him at their peril.
2. Contracts extending beyond the receivership and intended to be
   binding upon the trust, if made without express authority from
   or approval by the court, are within the equitable control of the
   court and subject to modification or cancellation if the court
   finds it necessary for the protection of the trust.
3. Where a receiver, who was authorized by the order appointing
   him to manufacture pulp in a pulp mill and to sell and dispose
   of the same in the regular course of business until the further
   order of the court, made a contract to sell and deliver the prod-
   uct of the mill at a certain price up to a date about eleven
   months thereafter, such contract, though deemed fair and rea-
   sonable at its inception, was terminable and was properly can-
   celed by the court at the termination of the receivership, and
   the other party has no claim for damages on account of such
   cancellation.
4. An order, in such case, permitting the purchaser to pay at the
   contract price for the product already delivered, but directing
   the receiver, in case of default in such payment, to sue for the
   market price, was erroneous and is modified so as to direct suit,
   in case of default, for the contract price.

APPEAL from orders of the circuit court for Outagamie
county: EDGAR V. WERNER, Circuit Judge. *Modified and
affirmed.*

This is an action by the plaintiffs to compel the receiver of
the *Kaukauna Fibre Company* to make a sale and transfer
of the property of the *Kaukauna Fibre Company* to A. J.

McKay of Appleton, Wisconsin, and to cancel the contract between the receiver and the *Union Bag and Paper Company* for the sale of products of the *Kaukauna Fibre Company*.

The *Union Bag and Paper Company* (hereinafter designated *Bag Company*) filed an intervening petition asking that it be made a party defendant to the cause, that an order be entered ratifying and confirming the contract between the receiver and the *Bag Company,* directing the receiver to carry out the terms of the contract and that any sale of the property and assets in the possession of the receiver be made subject to the rights of the *Bag Company* under the contract, and that the purchaser at such a sale be required to assume the contract.

*J. H. Delbridge* filed an answer to the intervening petition on behalf of all parties to the cause, including the receiver, and averred that the product had been sold to the *Bag Company* without authority from the court. It charged that the price of the product fixed by the contract was less than the market price and that enforcement of the contract would result in injury to the creditors and stockholders of the *Kaukauna Fibre Company.* It also alleged that the *Kaukauna Fibre Company* had entered into a contract, subsequent to the contract between the receiver and the *Bag Company,* to sell the mill and certain property of the *Kaukauna Fibre Company* to A. J. McKay of Appleton, Wisconsin, and alleged further that if the contract with the *Bag Company* were declared binding on the *Fibre Company* the sale of the property to McKay could not be consummated.

The receiver filed an answer alleging that he entered into the contract with the *Bag Company* for the best interests of the property of the *Fibre Company,* and that no other attorneys were authorized to appear for him in the proceeding than Albert H. Krugmeier and Francis S. Bradford.

Later *J. H. Delbridge* filed a petition alleging that at the time of the appointing of a receiver the *Kaukauna Fibre*

*Company* was indebted to the amount of $70,170.25. This petition asked that the contract with the *Bag Company* and other contracts be annulled and that the receiver be directed not to make further deliveries thereunder, that the receiver be directed to file his final account, and that he either be discharged and proceedings dismissed or that the "court authorize the receiver to make sale of the property to McKay and that the proceeds of the sale be used in payment of the claims against the company.

The receiver answered the *Delbridge* petition, submitting his account, and denied that he had entered into any contracts without authority, and alleged that he had not contracted with nor sanctioned the contract of sale with McKay.

The court held the contract between the receiver and the *Bag Company* void. The order provided that if the *Bag Company* pay the receiver $3,475.32, the amount due for product already delivered, the contract should be affirmed as to all material theretofore delivered, but in default of payment of this sum the court directed the receiver to sue the *Bag Company* for the market price of the product already delivered. The order further denied the motion of the *Bag Company* to be made a party to the action.

The court entered an order declaring the contract made by *J. H. Delbridge* on behalf of the *Kaukauna Fibre Company* with A. J. McKay to be void and canceled all contracts made by the receiver for future deliveries of the mill's products. The court also ordered that the property be sold to J. W. Kieckhoefer upon certain terms and conditions prescribed, the sale to be made free and clear of all liens and claims against the property.

Upon the receiver's report of the sale the court ratified and confirmed the sale of the property to J. W. Kieckhoefer and vested in J. W. Kieckhoefer the right to sue the *Bag Company* for goods sold and delivered under the contract with the receiver.

Subsequent to the above orders the *Bag Company* filed a further petition and contingent claim, alleging that since the property had been sold by the court it had become impossible to carry out the terms of the original contract with the receiver, that the amount of damages it suffered as the result thereof could not be ascertained at the time of the filing of the contingent claim, that a distribution of the proceeds of the sale in the receiver's hands was being contemplated, and asked that it be allowed damages for breach of contract and that pending the ascertainment of damages the receiver be instructed to retain $60,000, and that he be not discharged until the damages could be ascertained and paid.

The court denied this petition, approved generally the acts of the receiver in the operation and management of the *Kaukauna Fibre Company's* property, directed payment of the receiver, his attorneys, and the attorneys for the plaintiff in the original proceeding for their services, and that the receiver pay the creditors the amount of their claims, but provided that the court reserve the right to require each creditor to whom distribution should be made to refund his proportion of any amount necessary to make up a fund sufficient to pay the *Bag Company* its damages in the event any damages should be allowed to it, and retained jurisdiction of the cause for the purpose of enforcing such refund. The *Bag Company* appeals from each of the orders above mentioned.

For the appellant there was a brief by *Ryan, Cary & Frank* of Appleton, attorneys, and *Isham, Lincoln & Beale* of Chicago, of counsel, and oral argument by *Julius P. Frank* and *Paul V. Cary.*

*C. G. Cannon* of Appleton, for the plaintiff respondents.

*James D. Shaw* of Milwaukee, counsel for the respondent *Kaukauna Fibre Company.*

SIEBECKER, J.    The primary question presented on appeal from the various orders above mentioned is: What

rights has the *Union Bag and Paper Company* under the contract it made with the receiver on February 8, 1916, for the purchase of the hemlock and spruce sulphite to be manufactured at the *Fibre* plant, to be delivered by the receiver to the *Bag Company* from July 1, 1916, to January 1, 1917?

The receiver's power in administering his trust must be found in the order of his appointment, since there is no claim that this contract was specifically authorized or ratified by the court. The order of receivership provides that the receiver shall have full power and authority:

(3) "to operate and run, and to continue to operate and run, *until the further order of this court,* the defendant company's said pulp mill in its usual and regular course of business in the manufacture of pulp and paper stock, and to buy and pay for all necessary materials and equipment therefor . . . ;" and (4) "to finish up any unmanufactured stock, completing it for market, where such course seems best calculated for the best interest of all parties concerned, and to manufacture pulp with said pulp mill and sell and dispose of the same in the regular course of business and to handle and collect the moneys and receipts obtained therefrom in so doing *until the further order of this court."*

The terms of the provisions of the order authorized the receiver to incur the ordinary obligations incident to the conduct of the business committed to his care. The nature of this receivership conferred certain discretionary powers on the receiver to make contracts if required to promote the business interests in his charge. It is well established that the receiver's discretion in the administration of his trust is so limited that he cannot tie up the trust estate or prevent the court from enforcing an administration thereof in such manner as to protect the best interests of the trust. All parties dealing with a receiver are charged with knowledge of these limitations on the receiver's power and deal with him at their peril. Any person dealing with a receiver who desires to make an irrevocable contract must insist that it be

sanctioned by the court having custody of the property of the trust. The rule governing in such cases is well established and is stated in 34 Cyc. 286, as follows:

"When a receiver is authorized to carry on a business temporarily, his power to incur obligations for supplies, materials, and other expenses in the proper and usual conduct of such business follows as a necessary incident to the receivership. The courts, however, decline to sanction the exercise of this discretion on the part of receivers in respect to large outlays or contracts extending beyond the receivership and intended to be binding upon the trust."

When contracts of this nature are made with a receiver they are held to be within the equitable control of the court, and subject to modification or cancellation if the court finds it necessary for the protection of the interests of the trust. As observed in *Chicago D. V. Co. v. McNulta,* 153 U. S. 554, 14 Sup. Ct. 915:

"The receiver being an officer of the court, and acting under the court's direction and instructions, his powers are derived from and defined by the court under which he acts. He is not such a general agent as to have any implied power, and his authority to make expenditures and incur liabilities— like the one in question—must be either found in the order of his appointment, or be approved by the court, before they acquire validity, and have any binding force upon the trust."

The following cases sustain this practice: *Brown v. Hazelhurst,* 54 Md. 26; *Lehigh C. & N. Co. v. Central R. Co.* 35 N. J. Eq. 426; *Vanderbilt v. Central R. Co.* 43 N. J. Eq. 669, 12 Atl. 188; *Brunner, Mond & Co. v. Central G. Co.* 18 Ind. App. 174, 47 N. E. 686; *In re Punnett C. M. Co.* 24 Misc. 310, 53 N. Y. Supp. 204.

The terms of the order appointing the receiver are not broad enough to permit of the interpretation that the receiver had the power to bind the trust by contract for material to be used in conducting the business beyond the period of

the receivership without the express approval of the court. Since no such approval of the contract with the *Bag Company* by the court was obtained, it necessarily follows that when the property of the trust was sold and the receivership was to be terminated, during the life of the *Bag Company's* contract, it devolved on the court to deal with it upon equitable principles. The trial court considered that the contract, under the circumstances, should be treated as void and to allow the *Bag Company* to pay for the sulphite delivered pursuant to its terms at the stipulated price, and in default of such payment the receiver was directed to sue for the market value of the unpaid portion of the sulphite. It appears that the ruling in effect treats the contract as fair and reasonable at its inception and that it is subject to cancellation when the receivership ended. The contract should therefore be held terminable when the receivership terminated. Under the circumstances equity demands that the *Bag Company's* contract be enforced until it was canceled by the court, and recovery at the contract price be directed for the unpaid portion of the goods delivered under it. Since the contract was properly canceled at the termination of the receivership, it necessarily follows that the *Bag Company* has no claim for damages on account thereof. The order of the court permitting the *Bag Company* to pay the receiver the contract price for the unpaid portion of the sulphite delivered is correct, but the part of the order directing the receiver to sue for the market price thereof in default of payment is erroneous and should be modified by directing the receiver, in case of default of such payment, to sue for such balance at the contract price. All other orders appealed from must be affirmed. The respondents to recover their costs in this court.

*By the Court.*—It is so ordered.