**780**

**In re SINGER FURNITURE CORPORATION.**

District Court, S. D. New York.
March 4, 1931.

Zalkin & Cohen, of New York City (Israel Akselrod, of New York City, of counsel), for Edwards H. Childs.

McNamara & Seymour, of New York City (Stuart McNamara and Thomas E. Dewey, both of New York City, of counsel), for Empire Trust Co.

WOOLSEY, District Judge.

I adopt and approve the findings of fact in the report of the special master.

Accordingly, a turnover order to the Empire Trust Company may issue as therein recommended.

I. A motion having been made in this court on the petition of Edwards H. Childs, Esq., successor trustee to one Steinhardt who had defaulted and disappeared and thereafter committed suicide, that the Empire Trust Company, the depository of the moneys of this bankrupt estate, should turn over to the present trustee the sum of $9,500, the matter was referred, by order dated August 21, 1929, to one of the referees in bankruptcy to hear and determine.

A motion for confirmation and adoption of this referee's report came on to be heard on the bankruptcy motion calendar on December 17, 1930. At that time, on being advised that the reference had been made to

hear and determine, I refused to deal with it, unless the form of the order should be amended nunc pro tunc so that it should provide that the reference was made to hear and report only and that the referee should be considered as a special master. It was consequently agreed that such a change should be formally made.

Thereupon argument was had, time given for the filing of briefs, and thereafter, on the 31st day of January, 1931, a stipulation was entered into between the parties agreeing to the change required by me in the form of the order, and on that stipulation I made an order, dated February 4, 1931, modifying the previous reference nunc pro tunc so that it should provide that the matter was referred to a special master to hear and report.

In this form, therefore, the report of the special master now comes before me for my consideration.

II. The petition in bankruptcy in this case was filed on September 26, 1928, and on the same day an order was made appointing one David Steinhardt as temporary receiver of the assets and property of the alleged bankrupt wheresoever located.

After providing for the filing of a bond by the temporary receiver in the sum of $3,000, the order proceeded to authorize him to take possession of all the assets of the bankrupt, and ordered any persons having any of the bankrupt's property to deliver it forthwith to him as receiver.

Then, after the usual injunction against interference with the bankrupt's property, assets, and effects, the order proceeded as follows:

"And it is further ordered that the Receiver herein be and hereby is authorized to continue the business of the alleged bankrupt herein for the period of fifteen days with leave to apply to this Court for a further extension, if necessary.

"And it is further ordered that the duties and compensation of the receiver be and same hereby are enlarged pursuant to General Order XI promulgated by the Supreme Court of the United States."

The order ended with the usual provision that the receiver should take personal charge of the assets, and make, within five days, an inventory of the bankrupt's estate and of all the books and papers thereof which might come into his possession.

The provision in the order allowing the receiver to continue the business of the bankrupt for fifteen days was made under the provisions of the Bankruptcy Act § 2, subd. 5 (11 USCA § 11(5).

The provision for the enlargement of the duties of the receiver was appropriately made to meet the additional work entailed in acting on a broader basis than that of a mere custodian, as is inherent in a permission to continue the business. Cf. Bankruptcy Act § 48d (11 USCA § 76(d).

This provision was necessary because General Order XI, promulgated April 13, 1925, 267 U. S. 614 (11 USCA § 53), dealing with receivers and marshals as custodians, provides as follows:

"A receiver or marshal appointed by the Court to take charge of the property of a bankrupt after the filing of a petition shall be deemed to be a mere custodian within the meaning of Sec. 48 of the Bankruptcy Act, unless his duties and compensation are specifically enlarged by order of the Court, upon proper cause shown, either at the time of the appointment or later."

General Order XXIX, 172 U. S. 663 (11 USCA § 53), in bankruptcy, dealing with the payment of moneys deposited, which has been in force since its adoption by the Supreme Court November 28, 1898, provides as follows:

"No moneys deposited as required by the act shall be drawn from the depository unless by check or warrant, signed by the clerk of the court, or by a trustee, and countersigned by the judge of the court, or by a referee designated for that purpose, or by the clerk or his assistant under an order made by the judge, stating the date, the sum, and the account for which it is drawn; and an entry of the substance of such check or warrant, with the date thereof, the sum drawn for, and the account for which it is drawn, shall be forthwith made in a book kept for that purpose by the trustee or his clerk; and all checks and drafts entered in the order of time in which they are drawn, and shall be numbered in the case of each estate. A copy of this general order shall be furnished to the depository, and also the name of any referee or clerk authorized to countersign said checks."

III. The facts relevant to the motion before me are as follows:

On the 1st day of October 1928, that is, five or six days after the commencement of the proceeding, there was delivered to Steinhardt, as receiver in bankruptcy of the Singer Furniture Corporation, by the County

Trust Company of New York, a check in the sum of $10,036.35.

This check was drawn to the order of "David Steinhardt, temporary receiver of the Singer Furniture Corp., Bankrupt."

Steinhardt deposited this check in the Empire Trust Company, the respondent to the turnover proceeding, hereinafter referred to as the bank, to the credit of the bankrupt estate in an account which was entitled "Estate of Singer Furniture Corp., Bankrupt, David Steinhardt, Receiver."

On the 2d day of October 1928, two checks, dated October 2, 1928, drawn by Steinhardt as receiver, were presented to one of the paying tellers of the bank at the paying teller's window and paid out in cash.

One of these checks was drawn as follows:

"*Pay to the order of* David Steinhardt $4,500 00/100 Forty-five hundred and 00/100 *Dollars, For Account of* advances made on lien discharges Sept.
"29/28—Payroll 9/23/28
"*Estate* of Singer Furniture Corp.,
*Bankrupt*
"David Steinhardt, Receiver"

The other check was drawn as follows:
"*Pay to the order of* Joseph Wolf $5,000 00/100 Five thousand and no/100 *Dollars For Account of* interest payment due Oct. 1, 1928
"*Estate* of Singer Furniture Corp.,
Bankrupt
"David Steinhardt, *Receiver.*"

The italicized portions of the above checks were printed, and the other portions were in handwriting.

The special master found, it may properly be concluded, that Joseph Wolf, the payee of the second check, was a fictitious person, for the reasons that he was unknown to the bankrupt at the time the Wolf check was paid; that the paying teller who cashed the checks has not any recollection of using any means to identify Joseph Wolf; that the officers of the bankrupt corporation have testified that there was not any obligation due from the bankrupt corporation to any Joseph Wolf; and that there was not any Joseph Wolf in any wise connected therewith.

Furthermore, it is found there were not any such liens which Steinhardt, as receiver, could have discharged as were noted on the check which he drew to his own order, and there was no pay roll due on September 23, 1928, with the exception of a few hundred dollars.

It is found also that Steinhardt deposited $9,500 in cash to his personal account at the receiving teller's window of the bank on the 2d day of October, 1928, on which date the two checks above mentioned were cashed at the paying teller's window of the bank.

It has since been shown and it is found that Steinhardt embezzled this $9,500, and it is to recover this amount that the turnover proceeding here under consideration has been commenced against the bank.

IV. The proceeding is based on the ground that, as Steinhardt did not have, by the order appointing him, specific authority to draw any funds from the bank, the bank paid out this money to him at its peril, and cannot justify its acts under said order of appointment, which apparently it had not then seen, merely because the order authorized Steinhardt to continue the business of the bankrupt for a period of fifteen days.

The trustee further contends: (1) That, irrespective of this question of authority on the part of the receiver, the fact that the receiver drew a check to himself personally and that said check contains notations that were not justified put the bank on notice that it ought not to have cashed that check; and (2) that, in respect of the check to Wolf, as Wolf was a nonexistent person, the cashing of that check was the same as cashing a check on a forged indorsement of a depositor; and (3) hence that the bank has not any defense to the turnover order which has been recommended by the special master.

The bank resists the application, contending, in substance: (1) That a receiver in bankruptcy with power to conduct the bankrupt's business has necessarily implied the authority to disburse moneys of the bankrupt estate, and consequently the depository of such moneys is obliged to honor any checks which the receiver may draw against the moneys of the bankrupt estate to the extent of such deposits; and (2) that the notations on the checks did not constitute any notice to the bank of any impropriety in the purpose for which either of the checks were drawn; and (3) that there is not any evidence that the payment of the check to the order of Wolf was upon a forged indorsement, and consequently not a proper payment.

V. Before proceeding to the discussion of what seems to me the principal question in this case, there are some subsidiary matters which must be brushed aside.

1. The special master has mentioned, for some reason which is not clear to me, unless

it is to show it to be an authorized depository of the funds of bankrupt estates, that the bank on May 17, 1925, filed in the office of the clerk of this court a bond wherein it bound itself to "well and truly account for and pay over all monies now on deposit or hereafter deposited with such depository, and shall pay out the same only as provided by the Acts of Congress in such case made and provided and the Rules of the Court applicable thereto, and shall abide by all the lawful orders and decrees of the Court in and by the premises. * * * "

The first order making the bank an authorized depository of this court for funds of bankrupt estates under section 61 of the Bankruptcy Act (11 USCA § 101) was signed by Judge Hough and Judge Mayer on April 16, 1914, and filed the same day, and the usual depository bond for $25,000 with the National Surety Company as surety was submitted, approved, and filed.

On May 6, 1925, on petition of the bank, leave was given by Judge Goddard to substitute a bond of the Massachusetts Bonding & Insurance Company in the same amount. The order to that effect signed May 6, 1925, was filed on May 7, 1925, and the substitute bond duly approved, was filed May 17, 1925.

The provision quoted by the special master is from the last-named bond.

■ Some emphasis was laid on this bond by the trustee on the argument, but the only effect of it, so far as this proceeding is concerned, is that, owing to the orders above mentioned, the bank was a depository in which a receiver in bankruptcy could properly deposit funds of bankrupt estates without first obtaining specific permission from the court. This bond must, in other respects, be entirely eliminated from consideration herein, for, whilst it may measure the obligations to the court of the bank as a designated depository of bankruptcy funds, a suit under that bond could not be maintained in behalf of the trustee of a single bankrupt estate. Cf. Bankruptcy Act, § 50 (11 USCA § 78), and Illinois Surety Co. v. United States (C. C. A.) 226 F. 665, in which case it was said at page 668:

"The object of the bond is to afford protection to all beneficiaries alike. The spirit of the whole Bankruptcy Act would be violated, if the vigilant depositor could, by suit in his own interest, exhaust the obligation. Each depositor is entitled only to his proportionate share. If, however, each depositor could bring an action at law for his own use to obtain his proportionate share, the possible diversity of opinion as to what that share is might result either in subjecting the defendant to judgments in excess of the penalty or in defeating the just claims of the later litigants. Only in a proceeding in which all interested parties will have an opportunity to be heard, and resulting in a judgment or decree that will be res adjudicata as to the surety as well as to all depositors, can justice. be done."

■ The proper proceeding against such bonds is in equity, and is comparable to a bill of peace. Cf. Guffanti v. National Surety Co., 196 N. Y. 452, 458, 90 N. E. 174, 134 Am. St. Rep. 848; Illinois Surety Co. v. Mattone, 138 App. Div. 173, 122 N. Y. S. 928.

■ It is quite clear, therefore, that the trustee of this Bankrupt estate may not avail himself of any terms in a bank depository's bond to the United States except in an action brought on that bond by the United States for the benefit of all the estates with money on deposit in the bank involved.

The only bond which could be asked to respond for any wrongful act in this particular case is the bond given by the receiver as required by the order appointing him.

2. There is another point which should also be disposed of before taking up the main question, and that is the contention on behalf of the bank that, because of the procedure followed, without challenge, in most of the one hundred and forty other estates of which Steinhardt was receiver and for which he made deposits in the bank, the court is estopped to complain of the bank's cashing the checks of Steinhardt as receiver under the circumstances above outlined.

■ I think the obvious answer to this is that, even if there might be an estoppel against a court receiver in a particular case on the theory that, when the court appointed a receiver and he deposited moneys, the court was pro hac vice going into business and that at least some of the usual rules of agency applied, which I do not decide, it is quite clear that such an estoppel would not carry over from one proceeding to another proceeding, or from any number of other proceedings to this proceeding, for each court proceeding is a separate and individualized controversy. It is only in respect of matters within the four corners, so to speak, of one controversy, if at all, that any question of an estoppel against the court or its receiver could possibly be raised.

With these matters out of the way, we can now turn to the rather unusually interesting

question which has been raised by the trustee, and seems to me to be controlling of this proceeding.

VI. When a court grants the extraordinary remedy of a receivership, the receiver becomes a fiduciary, both towards the court and towards the persons interested in the estate of which he has been made receiver. He is in effect, as to third parties, the fiduciary agent of the court with limited powers which are defined by the order of his appointment.

The third party in this case, being an authorized depository for bankrupt funds, should be considered as being most strictly put on inquiry as to the scope of the limited agency which the order appointing the receiver gave him.

The strict construction which is put on a receiver's authority has been repeatedly indicated by the courts, and it is unnecessary to refer to many authorities.

An admirable case to illustrate the point is to be found in Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 14 S. Ct. 915, 38 L. Ed. 819, which involved the question whether a third party could hold a receivership estate of a railroad company for a long lease of office space made by the receiver.

After recognizing the want of harmony in the authorities as to how far a receiver might go to bind the estate by contracts, without having the previous approval or subsequent ratification of the court, Mr. Justice Jackson, after a discussion of some federal authorities, said, at page 562 of 153 U. S., 14 S. Ct. 915, 918:

"In Lehigh Coal & Navigation Co. v. Central Railroad, 35 N. J. Eq. 426, it was said that 'the receiver may undoubtedly appropriate moneys in his hands, belonging to the trust, to such purposes connected with the trust as he may think proper, always taking the risk that the court will finally approve his action; but he has no authority to bind the trust by contract without the authority of the court. Until his contracts are approved and ratified by the court, the court is at liberty to deal with them as to it shall appear just, and may either modify them, or disregard them entirely. * * * All persons dealing with receivers do so at their peril, and are bound to take notice of their incapacity to conclude a binding contract without the sanction of the court.'

"This states the correct rule upon the subject, especially in respect to contracts involving large outlays, and which may extend beyond the life of the receivership. The same general rule is stated in Beach on Receivers (section 257) as follows: 'But a receiver is not allowed to exercise his discretion in applying the funds in his hands. These he holds strictly subject to the direction of the court, and only to be disposed of upon its order. Neither can he enter into contracts without the approval of the court. Although, as receiver, he may enter into negotiations and make such agreements as would be binding upon him as an individual, yet, in order to affect the fund in his hands, his acts must be ratified by the court. This rule is so well established that it has been decided that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their own peril, and that the court has unquestioned power to modify, or even vacate, his agreements.' To the like effect is a statement of the rule made in section 186 of High on Receivers."

In a later Supreme Court case, Cake v. Mohun, 164 U. S. 311, 316, 17 S. Ct. 100, 41 L. Ed. 447, it was held that, when a receiver was authorized to operate an hotel it was an implied incident of that power that he might incur obligations for supplies and material necessary to carrying on such a business. Cf. also Cake v. Woodbury, 3 App. D. C. 60, 64, involving apparently the same receivership.

In Re Erie Lumber Co., 150 F. 817, a receiver appointed by the District Court of Georgia was authorized to continue business, and, in the order of appointment (cf. 150 F. 830), he was authorized to incur indebtedness for equipment not to exceed $3,000. Merchants who gave the receiver credit after indebtedness in this amount had already been incurred were not allowed to recover from the estate. Judge Speer said, at page 830:

"All of the orders of the court relating to this subject must be regarded as notice to all persons dealing with the receivers. It was the duty of merchants and others so dealing to look to the extent of the authority of the receivers."

There has not been cited to me, however, nor have I been able to find in the very considerable reading I have done in connection with the preparation of this opinion, any case dealing with the question whether, in the absence of specific authority to withdraw funds from the bank deposit of the receivership estate, the receiver is considered to have been authorized to make such withdrawals.

Here I have an order of appointment which has not been changed by the court, and

I must determine here the validity of a defense which is made to a claim by the bankrupt's estate, and by which the question of the receiver's authority to do an act not specifically authorized is raised.

I must, under the decisions, construe the order of the receiver's appointment strictly and determine the scope of his agency from such reading. As against his principal, any rights claimed which fall outside that scope are without legal foundation.

VII. It is always useful, I think, in approaching the solution of a problem such as I have before me here, to think of common analogies.

Banks are naturally hospitable to deposits. Any check for deposit will be accepted, though not indorsed by the hand of the drawee, even though it is merely stamped "For Deposit" with a rubber stamp.

The withdrawal of money on deposit, however, is necessarily hedged with formalities.

If a corporation opens an account with a bank, it may deposit any amount in it. But not a penny can be withdrawn until there has been lodged with the bank a resolution of the board of directors or other appropriate governing body of the corporation, authorizing certain of its officers or agents to draw checks against its funds in a certain manner, and until, of course, the usual signature cards have been filed.

The corporate principal in such a case is required, authentically and precisely, to authorize its officers or agents to withdraw its funds before the bank will honor its corporate check.

Here the court is in the position of the corporation and the receiver in the position of the officer who might seek to withdraw corporate funds without corporate authority.

The difference between an order which would constitute the receiver a mere custodian, and the present order is found in the provision authorizing the receiver to continue the bankrupt's business for fifteen days, and in the provision enlarging his duties and compensation under General Order XL.

The first provision is occasional only. The second is quite common for, because a receiver in bankruptcy usually has to take steps in behalf of the estate, as, for example, in collecting accounts receivable which are not challenged, and in retrieving property, it has been found that a receivership with a receiver acting as a mere custodian is not adequate, except in the simplest cases, to meet the exigencies of a bankruptcy situation.

The rationale of a receivership order like that made in this case is simple.

It is always to be assumed that the order of a court is made after due consideration and with a purpose. If a court, while giving authority to a receiver to carry on a business, does not give him authority to make cash expenditures in connection therewith, or to make withdrawals from the bank deposit of the receivership estate, it may well be that the court has in mind that it wishes to scrutinize the items of such expenditure in order to determine whether the business should be allowed to continue as long as the original order provides, or that it thinks the payments for such expenditures should be deferred till some time later in the administration of the estate.

The bank has not, therefore, any right to spell out from the authority given to Steinhardt to continue the business for fifteen days any authority to withdraw moneys of the bankrupt's estate deposited with it as an authorized court depository.

Dealing at its peril with a receiver, the bank should have got a copy of the order of appointment, which apparently in this case it did not, and, when it found that the order did not contain specific authority to withdraw funds of the estate, it should have demanded either a blanket order giving such authority or a separate order as a condition precedent to honoring each check.

By this decision the bank is merely told that it should have done what it would always do in connection with the account of a corporation; i. e., ask for a specific authority for the withdrawal, on another's order, of funds which it had received from the corporation.

VIII. The contention of the Bank, however, goes further. It claims that, whatever may be the limitations of authority in the receivership order, under the rules of this court then in force it was justified in allowing Steinhardt, as receiver of this bankrupt, to withdraw funds on deposit to the credit of the estate.

This contention is based on the fact that Bankruptcy Rule 30 of this Court, which refers to General Order XXIX, applies only to trustees and constitutes a limitation on them only. By implication, it is argued, receivers have authority to draw out funds from the deposits of bankrupt estates without special order.

The bank argues further that the new Rule 11a of this Court, adopted since the Steinhardt defalcations, and requiring coun-

ter signatures in cases where there are individual receivers, but apparently not where there is a corporate receiver, implies a power in a receiver of a bankrupt to draw out moneys.

I do not think that such an implication follows from these rules.

I think that what the rules really mean is that, if a receiver is authorized to make cash expenditures and withdraw funds from the deposits of estates, unless he be a corporate receiver, his checks have to be countersigned.

It is a rule of caution merely, as if a corporation required a vice president and its treasurer both to sign checks.

Back of such signatures and necessary to authorize withdrawals from depositories on such signatures there should be a specific authority by court order lodged with the depository.

Inasmuch, therefore, as I hold that the bank was not justified in honoring checks by Steinhardt on the deposit made with it of the funds of this bankrupt, until Steinhardt had been specifically authorized by the court to make such withdrawals, it becomes unnecessary for me to consider the somewhat delicately balanced questions here involved as to whether the bank was put on notice of irregularities by reason of the circumstances under which the two checks above mentioned were cashed.

Orders in accordance herewith may be submitted for signature on three days' notice.