## DARLING v. CORNSTALK PRODUCTS CO.

### In re NORTH PIER TERMINAL CO.
### No. 252.

District Court, E. D. Illinois.
Dec. 31, 1931.

Charles Troup, of Danville, Ill., for petitioner.

Walter T. Gunn and Harold F. Lindley, both of Danville, Ill., for respondents.

LINDLEY, District Judge.

On May 27, 1930, receivers were appointed upon a creditors' bill filed against the Cornstalk Products Company in Danville, Ill. The estate included a plant, machinery, and inventory costing originally more than $1,000,000. Prior to the appointment, the comparatively small amount of pulp involved in the matter now before the court had been stored in Chicago, with the intervening petitioner, a qualified warehouseman under the laws of Illinois, sections 259 and 260, chap. 114, Illinois Smith-Hurd Rev. Statutes 1931, and at the time of the appointment storage charges in the amount of $1,152.32 had accrued in petitioner's favor, for which, by virtue of said statute, it had a lien upon the deposited goods.

On June 26, 1931, more than a year after the appointment, petitioner intervened, praying that the deposited property be sold to satisfy its charges, and that, in case of insufficient return, such of its claim as remained unsatisfied be allowed as cost of administration, of equal priority with the receivers' certificates and other expenses of administration. Thereupon the court ordered the property sold by petitioner, subject to approval, without prejudice to the rights of interested parties, and directed petitioner to file report of such sale. The latter reported a sale for $1,516.21, and now asks that a storage charge of $2,683.25, accruing subsequent to the appointment of the receivers, and in addition to the amount of $1,152.32 due it at that time, be allowed the priority aforesaid. The receivers ask that the surplus of proceeds of sale of $363.89, realized over and above the

amount due petitioner on May 27, 1930, be delivered to them, and the balance of petitioner's charge allowed as a general claim, without any priority.

Petitioner does not claim any statutory lien against the receivers as to the charges accruing subsequent to their appointment, saying, "We doubt whether a lien could be acquired against the pulp while it was in the possession of the Court," but contends that a charge for such period should be allowed as cost of administration.

The receivers never operated the business. They were authorized "to take such action as will best preserve and conserve the property, * * * with the usual and customary powers of receivers." Subsequently to their appointment, some $45,000 was borrowed upon receivers' certificates and expended for preservation, after the court had provided for same by an order making such certificates a first lien upon the assets.

The order appointing receivers restrained all creditors from foreclosing alleged liens. Subsequently various parties asserting mechanics' liens intervened in the proceedings. Such interventions await final determination by the court. No action as to the pulp here involved was requested by any party until the filing of the intervening petition now under consideration in August, 1931, and no order defining the receivers' powers or directing their action with reference thereto was ever requested or entered.

■ Unless the power is conferred by statute, federal receivers can legally do nothing without express authority of the court. 6 Cyc. of Fed. Proc. § 3386, p. 1006; Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447; Northern Finance Corp. v. Byrnes (C. C. A.) 5 F.(2d) 11. Without leave of court, a receiver has no power to pledge the trust estate or to make a contract for a lien or for borrowed money. 2 Fost. on Fed. Prac. § 309, p. 1555, and cases there cited. It follows, therefore, that the mere inaction of the receivers, or anything they may have said to petitioner, in the absence of authority from the court as expressed in formal orders, is insufficient to create a charge upon the rest of the estate. The allowance of costs is within the discretion of the court, 4 Cyc. of Fed. Proc. §§ 1074 and 1084, pp. 129 and 155, and cases there cited; and, while costs or compensation for preservation of a fund may be allowed as a charge against it, a direct benefit must have resulted to other parties, and the allowance is always within the discretion of the court, Cuyler v. A. & N. C. R. Co. (C. C.) 132 F. 570. More-

over, it should be observed that the present petition does not seek a charge against property preserved but against other property to which petitioner has contributed no benefit.

■ Claims arising during the conduct of a receivership will not be accorded priority, unless such action is equitably necessary or proper. Expenses improvidently incurred or arising from unauthorized action of the receivers are entitled to no priority. 53 C. J. 200, § 432. In Union Trust Company v. Ill. Mid. R. Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963, the court had before it claims for priority as expenses or cost of administration, for various sums borrowed by the receivers without order of court. The court said (see pages 477, 479 of 117 U. S., 6 S. Ct. 809, 832, 29 L. Ed. 978 and 979): "We are of opinion that these two claims ought not to be allowed priority. The debts were contracted without the previous authority of the court. * * * We are of opinion that this item cannot be allowed priority, for the reason that the borrowing of the money for which the notes were given was not sanctioned in advance by the court. Though made up of amounts not, perhaps, large in themselves, the aggregate cannot be called small; and there never could be any difficulty in obtaining an order of the court, if one were proper, *to borrow money to a specified total amount, for specific purposes.*" See, also, Mercantile Trust Co. v. Tenn. Ry. Co. (D. C.) 291 F. 462 at page 471; Chicago Deposit Vault Co. v. McNulta, 153 U. S. 554, 14 S. Ct. 915, 38 L. Ed. 819; Cowdrey v. Galveston, 93 U. S. 353, 23 L. Ed. 950; and Hooper v. Winston, 24 Ill. 354 at page 366.

■ This court was at all times open to petitioner. Under its basis for charges, the claim was rapidly overtaking the value of the deposit. Indeed, when finally relief was sought, the amount demanded had grown to $3,835.-57, over two and one-half times the value of the goods, as shown by the proceeds of sale. Disposition of the pulp could have been authorized upon intervention by petitioner at a time when the charge was less than the value of the goods. Counsel acted promptly when consulted, but petitioner negligently allowed its claim to mount for 15 months without taking action.

In this situation, I am of the opinion that to allow petitioner priority for the charges accruing after a reasonable time for action after the appointment of receivers, in the absence of showing of benefit to the trust fund sought to be charged, is not within my discretion. To do so would lessen, to the extent

of such allowance, the security of the holders of receivers' certificates who have in good faith advanced money for the benefit of the estate, of other parties who have contributed to that estate, and of mechanic lien holders, and unjustly reduce the equity of unsecured creditors.

I am of the opinion, however, that equity permits the retention of the balance of proceeds of sale of $363.89 by petitioner. It represents only such part of the charges as would have accrued in the interval, within which petitioner, had it acted diligently, might have secured proper relief in this court.

The petitioner will be allowed to retain all the proceeds of sale in full satisfaction of its claim. It may have no relief as to any part of its demand in excess of such proceeds of sale either as a prior claim or as an unsecured one.

Proper order may be submitted.