## O. R. SEAGRAVES v. JOHN M. GREEN, DISTRICT JUDGE, ET AL.

No. 4560.    Decided December 1, 1926.
(288 S. W., 417).

### 1.—Supreme Court—Appellate Jurisdiction.

The appellate jurisdiction of the Supreme Court by Art. 5, Sec. 3, of the Constitution extends to cases in which Courts of Civil Appeals have appellate jurisdiction, but "under such restrictions and regulations as the Legislature may prescribe." Under these regulations (Rev. Stats., 1925, Art. 1728) it is an indispensable prerequisite to its exercise that the case has been brought to a Court of Civil Appeals by appeal or writ of error. (P. 237).

### 2.—Supreme Court—Original Jurisdiction—Mandamus.

The original jurisdiction conferred on the Supreme Court (Constitution, Art. 5, Sec. 3) to issue writs of mandamus, certiorari, procedendo, etc., in aid of its jurisdiction does not authorize their use to correct errors of the District Court made in the exercise of its jurisdiction (in management of a receivership) though these, by the uncontradicted evidence, threatened to destroy, during the litigation, the property rights of a litigant who has tendered to the trial court a method by which they could have been preserved. Such error in the exercise of its jurisdiction could be reviewed only on appeal. (Pp. 237, 238).

### 3.—Same—Orders Beyond the Power of the Trial Court.

The trial court, in the conduct of a receivership, had no power or jurisdiction to confer on its receiver of the property involved, in his discretion, the determination of matters resting only in the judicial discretion of the court itself. Such orders were nullities, and where destructive of the interests of a litigant the Supreme Court may, by its writ of mandamus, require the trial court to disregard them and refrain from carrying them out. (Pp. 238, 239).

### 4.—Same—Case Stated.

Pending actions over a lease of rights to mine for oil and gas, involving the rights of the lessee in a producing gas well and in contemplated wells for production of gas on the leased premises, a receiver appointed by the court being in possession of the premises in controversy, orders were

entered by the court authorizing the receiver in his discretion: (1) To drill other wells for gas on the leased premises, making the cost a charge against the property by issuance of receiver's certificates; (2) To make tests of the existing producing well and determine whether the gas therefrom was merchantable, and if he determined that it was not so, then in the exercise of his discretion to "kill" such well and sink another nearby. And he was authorized to market and sell any merchantable gas so produced—all this without submitting his determinations and acts to the judgment of the court. *Held*, that such orders conferred on the receiver the determination of matters of judicial discretion affecting the interest and rights of the lessee; that they were void for that reason; and that the Supreme Court had power to require the trial court by writ of mandamus to disregard them. (Pp. 224-240).

**5.—Receivers—Appointment by Judge in Vacation.**

The appointment of a receiver may be made by the judge in vacation where all the parties in interest are represented and consent to such hearing. (P. 238).

**6.—Jurisdiction—Supreme Court—Constitution.**

Such jurisdiction as is conferred on the Supreme Court, either absolutely or contingently by Art. 5, Sec. 3, of the Constitution, may be exercised without regard to statutory omissions or declarations of such power. (P. 237).

**7.—Jurisdiction—Receiver — Conferring Judicial Authority — Mandamus— Remedies.**

Though the authority attempted to be conferred on a receiver was a nullity because involving the exercise by him of judicial discretion, and in exercising same he acted at his own risk and liability to suit, neither the existence of this remedy, nor that by appeal, would prevent the use of the writ of mandamus by the Supreme Court, to preserve the rights of a party against such unlawful action where such other remedies would not avail to prevent destruction of his rights and to preserve the status thereof during the pendency of the litigation. (Pp. 238, 239).

Original application to the Supreme Court by Seagraves for writ of certiorari and mandamus against Green as District Judge, and others. The Houston Gulf Gas Company, interested with relator, presented a petition in intervention which does not appear to be filed.

The court, having granted leave to file Seagraves' application, referred same to the Commission of Appeals, Section A, for their opinion on the merits, and adopt same as that of the court. A motion of relator for rehearing was overruled on March 9, 1927.

*James K. Dougherty, Marshall Eskridge, Campbell, Myer & Simmons, Fly & Ragsdale,* and *Vinson, Elkins, Sweeton & Weems,* for relator.

The appointment of the receiver in this case was illegal and void because at the time of the appointment the suit had not been filed and the court had no jurisdiction. *Amason v. Harri-*

gan, 288 S. W., 566; R. C. L., Vol. 23, Sec. 35, p. 37; Standard Ency., Vol. 16, Sec. 2, p. 626; Guy v. Doak, 47 Kan., 236, 27 Pac., 968; Presley v. Harris, 102 Ind., 14 N. E., 188; Harwell v. Potts, 80 Ala., 70; French v. Gifford, 30 Iowa, 148; State v. Bank, 260 Mo., 164, 168 S. W., 924.

The Supreme Court of Texas, unless expressly prohibited by constitutional provision or statute, has inherent, appellate and original jurisdiction to issue writs of certiorari to the inferior courts of the State.    Art. 5, Sec. 3, of the State Constitution; Art. 1521, Rev. Stats., 1914; Art. 1733 Rev. Stats., 1925; Corpus Juris, Vol. 11, Sec. 105, p. 129, and authorities cited in notes.

If there is adequate remedy provided by appeal or writ of error, certiorari will not lie, but if the remedy is not adequate, certiorari will lie.    Corpus Juris, Vol. 11, Secs. 53, 54, 55, 58, pp. 111-116.

The writ of certiorari will reach and correct all errors of law committed in the trial and be sufficient to keep the trial court within the proper limits of its jurisdiction.    R. C. L., Vol. 5, Sec. 3, p. 250, and Sec. 11, p. 259, Corpus Juris, Vol. 11, Sec. 1, p. 88, and authorities cited in notes; Jackson v. People, 9 Mich., 111; 77 Am. Dec., 491; Milwaukee Iron Works v. Schubel, 29 Wis., 444, 9 Am. Rep., 591.

Certiorari serves same function as writ of error would serve in case there is no appeal provided by law from the judgment of the lower court complained of.    Corpus Juris, Vol. 11, Sec. 5, p. 89, and authorities cited in notes; R. C. L., Vol. 5, Sec. 5, p. 253, and authorities cited in notes.

A judge at chambers has the power to appoint a receiver to take charge of property, but the judge, as judge, has no authority or power at chambers to order the property in the hands of the receiver sold.    This the court must do only in term time after due notice to the parties at interest.    Wilson v. Aultman & Taylor Co., 158 S. W., 783; State ex rel. Gray v. Phoenix Loan Assn., 60 S. W., 74; Hurst v. Nichols Bros. Co., 65 S. W., 364; Stand Cyc., Vol. 16, pp. 608-609, 624-627, and authorities cited.

A district court of Refugio County cannot be legally held in DeWitt County to dispose of in vacation a suit filed in the district court of Refugio County even by consent of the parties. American Nat. Ins. Co. v. Valley Reservoir & Canal Co., 209 S. W., 438; Hodges v. Ward, 1 Texas, 244; Lyons-Thomas Hardware Co. v. Perry Manfg. Co., 27 S. W., 100; Hunton v. Nichols, 55 Texas, 224.

Under the law the receiver has no legal right to sell the gas in his possession as receiver unless directed so to do by the

*District Court* of Refugio County in term time. The *District Judge* in vacation had no authority to order, as was done, the sale of the gas by the receiver. Arts. 2293, 2297, 2317, Rev. Stats., 1925; Pitman v. Byers, 101 S. W., 789; Barker v. Wilson, 189 S. W., 748; National Surety Co. v. David Castle Construction Co., 170 S. W., 800; Casper v. Fitzgerald, 121 U. S., 87, 30 L. Ed., 882; Town of Andes v. Slauson, 130 U. S., 435, 32 L. Ed., 989.

The order issued by Judge Green directing the receiver to sell the gas produced from the leased premises and to kill the · gas well situated on said premises, being a vacation order, is wholly illegal, and from such order the law allows no appeal. The damages that would result to plaintiff, O. R. Seagraves, and intervenor, Houston Gulf Gas Company, if said receiver is permitted to sell said gas or kill said gas well, is beyond controversy, irreparable. Art. 2250, Rev. Stats., 1925; Talkington v. Talkington, 266 S. W., 835; Pittman v. Byars, 101 S. W., 789; National Surety Co. v. Castle Construction Co., 170 S. W., 800; Hunter v. Nichols, 55 Texas, 224.

If a receiver should undertake to make a sale of the gas in his possession as receiver under the terms of the order issued by Judge Green on January 6, in chambers, same would be altogether void, because such a sale would not be valid as a judicial sale, nor would it be valid as a voluntary sale by the parties owning the gas, and the receiver and his bondsmen under such a sale would be personally responsible in damages to the owner of the gas. R. C. L., Vol 16, Sec. 2, p. 6, Sec. 19, p. 25, Sec. 22, p. 29, and authorities cited.

The judge does not constitute the court; he is only an independent part of the court, and by the term court as used in Art. 2297, Rev. Stats., 1925, the Legislature evidently intended to mean a court in session and not a judge of a court. Art. 2297, Rev. Stats., 1925; Pittman v. Byers, 101 S. W., 789; Talkington v. Talkington, 266 S. W., 835; Baker v. Wilson, 189 S. W., 748; C. J., Vol. 15, Sec. 1, pp. 715, 716, 718.

Confirmation of judicial sale is necessary to pass the title, and all interested parties should be given notice of such sale and an opportunity be given to contest same. R. C. L., Vol. 16, Sec. 57, p. 78.

Where the court has common law jurisdiction, it is not necessary for a constitutional provision to be passed or a statute enacted to give such court jurisdiction to issue writs of certiorari, the writ of certiorari being a common law remedy. Corpus Juris, Vol. 11, Secs. 18 and 19, p. 95; Territory of New Mex. v.

Valdez, 1 N. M., 548; Tennessee Central R. R. Co. v. Campbell, 75 S. W., 1012; Rush v. Allen, 76 Atl., 370; Specht v. Central Pass. Railroad, 68 Atl., 785.

The term "court" as used in Art. 2297, Revised Statutes, 1925, was intended by the Legislature to mean the court in term time. Art. 2297, Rev. Stats., 1925; Pittman v. Byers, 101 S. W., 789; Baker v. Wilson, 189 S. W., 748; National Surety Co. v. Castle Const. Co., 170 S. W., 800; Casper v. Fitzgerald, 121 U. S., 87; Town of Andes v. Slauson, 130 U. S., 435.

*John M. Green,* respondent, in *pro per.,* and *V. B. Proctor,* for respondent.

### ON MOTION FOR LEAVE TO FILE PETITION.

PER CURIAM: The Supreme Court is inclined to the opinion that it has no power to review the orders complained of in the exercise of appellate jurisdiction. The Court has concluded, however, that in any event the motion for leave to file the petition should be granted, to determine whether the Court should grant relator relief in the exercise of the Court's original jurisdiction by mandamus for the vacation of void orders.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

Heard owned and subject to mineral leases still owns certain lands in Refugio County. Some years ago he executed in favor of Pratt a mineral lease in respect to the lands. Pratt then made a contract and assignment whereunder Seagraves apparently acquired an undivided interest in the mineral leasehold and the right to purchase and dispose of Pratt's portion of whatever gas might be produced from the lands. Pratt brought suit against Seagraves wherein he sought cancellation of the assignment and contract, etc. Heard brought suit against Pratt and assigns in which cancellation of the mineral lease, etc., was sought. Both suits are now pending in the District Court, Refugio County, of which Hon. John M. Green is the Judge.

In the case first mentioned, and on November 18, 1925, an order was entered, in chambers and without notice or hearing, wherein Murray was appointed receiver to take charge of the property in controversy. Murray duly qualified. A like order, under like conditions, was made in the other cause on December

14, 1925, and thereunder Murray qualified.    No appeal was taken in either case, nor was motion to vacate or modify the receivership orders, or either of them, made.

On December 14, 1925, the receiver presented to Judge Green a report in writing in which it was stated that the receiver "has ascertained and determined that the potential producing capacity of said gas well on said land is estimated to approximate 72,000,-000 cubic feet of gas per day—that the well at this time is closed and no provisions have been made for the marketing and sale of gas therefrom," that the condition of the well was bad and gas from the land was being drained into neighboring lands and produced and marketed from these lands, that in order to protect the land involved from drainage, etc., it was necessary to drill upon it one or two or three other wells.    It was further shown in the report that there was in the vicinity but one available pipe line through which the gas could be marketed, and that the operators of the pipe line would not receive gas from the old well because that gas was surcharged with water and sand as a result of the defective condition of the well.    The operators of the pipe line would take the gas, it was said, if the old well should be reconditioned, etc.    In the report it was stated that parties at interest claimed that the original well was then in proper condition for the marketing of gas there-from.    The report contained a prayer for hearing and conse-quent directions.

Thereupon Judge Green entered an order setting the matters presented by the receiver for hearing, at Victoria, Victoria County, on December 21, 1925, and caused notice of the order to be served upon relator et al.    The order was signed, in vaca-tion, at Victoria and caused to be entered in each of the cases.

On December 21, 1925, at Victoria, all of the parties in the two cases appeared and announced ready for the hearing, and the hearing was then and there begun.    After some evidence had been introduced, relator and others of the defendants asked a postponement of the hearing until December 28, 1925.    Other parties objected, but Judge Green signed an order that the hear-ing be resumed at Cuero, DeWitt County, on December 28, 1925.    This order was entered in each of the cases and therein it is recited that "counsel for the defendants" (i. e. relator and others) "expressly acquiesced in said ruling of the court."

On December 28, 1925, all parties appeared at Cuero and announced ready and the hearing was resumed.    Upon conclu-sion of the testimony Judge Green took the matter under advise-ment.    Thereafter he suggested to counsel for the various par-

ties that they meet him at Cuero on January 6, 1926, for discussion, etc., of the character of order to be entered, and the meeting was held.    Counsel for Seagraves participated in the discussion.

On January 6, 1926, Judge Green signed an order which (except for preliminary recitals) reads as follows:

"And the court after having heard all the evidence, and after mature consideration of same, and after hearing of counsel for all parties, deems fit to make and enter the following order upon said hearing:

"That said receiver, P. A. Murray, shall continue to possess and have control of all of said 250-acre tract of land, constituting the subject-matter of the lease from A. W. J. Heard to Thos. H. Pratt and the subject-matter of the assignment and contract between Thos N. Pratt and O. R. Seagraves, and the assignment to Gaines, Trustee, and Mrs. Smith, respectively, said possession and control of said receiver to be in so far as it may be necessary and proper by said receiver to explore and develop, or cause to be explored and developed, said tract of land as to the gas or other minerals thereunder, such possession to be exclusive of all parties to either of said causes, and said receiver is hereby instructed, directed, and authorized to perform any and all of the following:

"FIRST:  That the receiver shall forthwith, or as soon as reasonably possible, drill, through employes of receiver, or have drilled under contract with other person, two offset wells on said 250 acres of land, these offset wells to be so located as, in the opinion of the receiver, will best protect the lease and offset the drainage from the two producing wells located near the property line of said 250 acres, and known as the W. J. J. Heard, or Fannie V. Heard, wells Nos. One (1) and Two (2).  The receiver is given fullest latitude as to whether or not to put down these wells by employes of the receiver, or under contract with some person, wholly independent of any litigant to this cause, or to contract by any person, whether or not a litigant, to put down said wells, and is further given fullest discretion as to the terms and provisions of said contract or contracts, and method and times of payment under said contract or contracts, but the receiver is instructed to make all of such contracts in writing, and to submit same to the court for the court's approval, but no hearing need be had thereon.  Also, in making said contracts, the receiver has latitude and discretion to contract with such person or persons whom he deems the lowest and best and safest person with whom to contract for the drilling of said offset wells, and in making said contracts, it is directed that the

receiver try to arrange, if possible, for the marketing of the gas from said offset wells as soon as possible, in order that a revenue may be produced from this property and gas may be utilized and used from said wells.

"SECOND: That the receiver shall forthwith, or as soon as reasonably possible, cause to be tested in his presence, and in the presence of any expert or experts by him selected, the present well upon said 250-acre lease, now known as the A. W. Heard well No. 1, and sometimes called the Smith well, said test to be for such time, and under such conditions, as the receiver deems proper in order to determine whether or not the gas from said present well is of merchantable quality and quantity, and also determine whether or not the taking of said gas from said well in reasonable quantities would or would not injuriously affect the gas or mineral rights in said 250 acres, or in any portion of the same, and also determine whether or not the gas is of such purity that it would or would not, as said test determines, injuriously affect any pipe line into which said gas might be turned. In the event that said test determines, in the opinion and discretion of receiver, that said gas is merchantable, and the taking and drawing of gas from said well would not injuriously affect any portion of the lease, or any pipe line into which said gas would be turned, then the receiver is hereby authorized and empowered to contract for such length of time as he deems proper for the sale of said gas to any litigant, or other person not a litigant in either of these causes, and to receive pay for said gas, and to immediately pay over to the said A. W. J. Heard, original lessor, one-eighth (1/8) of the gross proceeds arising from such sales, whenever said proceeds are received by him.

"The receiver is instructed to give permission to any interested person, who so requests, to be present at said test, and this permission, of course, extends to and includes any representative of the Railroad Commission, but the receiver need not delay such test on account of the absence of any such parties. Notice to be given by telegram, if necessary.

"THIRD: If it should be determined by said receiver, upon said test above indicated of said present well, that the taking of gas from this well in merchantable quantities might likely prove of injury to the leased premises, or any portion of the same, or might likely prove an injury to any pipe line into which said gas might be turned, then said receiver is authorized and directed to employ such method and means he may deem best to kill said

well, and in such event he is further authorized and instructed to drill, or cause to be drilled, another well in the near vicinity of this present well, and again he is given fullest latitude and discretion as to location, and method or terms or provisions of any contract he may enter into, in such regard, and as to methods of repayments for said work, either of killing said old well or of drilling said new well in its place.

"FOURTH: Both as to said two offset wells, and said present well, or said new well, if substituted therefor, the receiver is authorized and empowered to market and sell said gas. In all sales of gas from any well on said leased premises, the receiver shall collect one-eighth (1/8) of the gross proceeds from said gas sale, and pay over, free of any charge or expense, to the said A. W. J. Heard, and the remaining seven-eighths (7/8) of said gas sales or proceeds arising from the marketing of gas, are to be applied by said receiver toward payment of Receiver's Certificates, if issued, and to payment of the work of drilling said two offset wells and said new well, if latter be found necessary, after deduction from such amount of seven-eighths (7/8) of all gas sales only of the expenses incurred by the receiver up to date and subsequent to the date of this order in the care and custody of said leased premises, and the expenses incurred in the making of the test previously authorized in this order of the gas in said present well, and payment for said offset wells or new wells or Receiver's Certificates.

"All contracts for sale of gas shall provide that same shall not extend beyond the termination of the receivership in this case, and all contracts shall be in writing and submitted to the court for approval, but no hearing need be had thereon.

"FIFTH: The receiver is further authorized, if he deems same expedient or advisable, to issue Receiver's Certificates for such amount as he may deem necessary, not in excess of seventy-five thousand dollars in principal, to carry on and conduct any or all of the operations authorized by this decree and conducted by the receiver hereunder, such certificates, if issued, to bear such date and to be payable at such times and to bear such rate of interest, all as the receiver may deem proper, and said certificates, if issued, shall be a first charge and lien upon seven-eighths (7/8) of all the gas and other minerals under said 250 acres of land, subject only to court costs and the expenses of this receivership, and payment of any contracts made by said receiver.

"The above order is made in duplicate in order that same may be filed respectively in each of said causes aforesaid, and the Clerk of the District Court of Refugio County is hereby directed

to make one entry of this order upon the minutes of the District Court of Refugio County, Texas."

Seagraves, with permission, filed in the Supreme Court a petition which contains a recital of each of the proceedings down to and including the order of December 14, 1925, in which the hearing at Victoria was provided for and thereafer is in words as follows:

"That at said hearing all parties to the suit appeared, including this plaintiff, and said hearing continued until the 6th day of January, 1926.

"That at said hearing affidavits and oral testimony were taken and considered by the defendant, the District Judge, the Honorable John M. Green, and no written pleading was required on the hearing by order of the said defendant Green, and it was declared that their objections would be considered presented orally.

"That by the uncontradicted testimony offered at such hearing and as likewise appears from the pleading of the parties plaintiff herein, plaintiff O. R. Seagraves, who was defendant in said two causes and which were consolidated for the purpose of a hearing, was shown to have the right to purchase all of the gas from said leased tract at the rate of five cents per thousand cubic feet. It was also shown by the uncontradicted evidence that he had secured a contract for the construction of a pipe line by the Houston Gulf Gas Company from Refugio, Texas, to the city of Houston, Texas, and that it was in actual course of construction, and that the Hope Engineering & Construction Company had contracted to complete the construction thereof by March 1, 1926, and had given a bond in the sum of $4,000,000 that it would complete the construction of said line by said date under a penal obligation to forfeit two thousand dollars per day for each day after March 1, 1926, that the completion of such line should be delayed.

"It also appeared from the uncontradicted evidence that O. R. Seagraves had assigned the contract for the purchase of such gas to the Houston Gulf Gas Company, and that the Houston Gulf Gas Company had in turn contracted with the Houston Gas & Fuel Company and the city of Houston for the delivery of such gas from said place beginning not later than March 1, 1926.

"It further appeared from the uncontradicted testimony that the gas from said lease was in part the basis of the construction, maintenance and operation of a pipe line so being constructed by the Houston Gulf Gas Company, and that its value as a transported article to the city of Houston was twenty-five

cents per thousand cubic feet, and that thereby Seagraves and his assignees had a profit therein of approximately twenty cents per thousand cubic feet, and this profit was invested in the construction of the pipe line, and was part of the basis for the amortization of its cost of construction, and also of the cost of its maintenance, and a reasonable profit therein on the investment, and that this was a real interest and estate in Seagraves, and which he was entitled to have protected by the order of the defendant, the Honorable John M. Green, District Judge. That when the term 'defendant' is herein used without specifically naming any other defendant, is here meant the Honorable John M. Green, District Judge.

"That on said hearing it was shown by the uncontradicted testimony that the current sale price of gas in Refugio County at the premises covered by the lease in controversy in the main cases was five cents per thousand cubic feet; that the only purchaser therefor until the first day of March, 1925, capable of accepting the gas for delivery into its line was the Houston Oil Company of Texas, and that the price for which it could be sold was five cents per thousand cubic feet.

"That said O. R. Seagraves, plaintiff herein, at said hearing, offered to take the gas from such lease from the Smith well at said price of five cents per thousand cubic feet in such volume as the court should determine under the rules and regulations of the Railroad Commission and the laws of the State of Texas as should ratably be proper for the pipe line to draw from such well; and also in open court said O. R. Seagraves offered to pay for said gas at such market price in such volume as the court should declare to be required and to begin paying therefor from the 1st day of March, 1926, to the receiver, and to guarantee his performance of his contract by such a bond as the court, or the receiver, should approve and in open court advised the court that he did this in order to protect his interest and estate in the gas as purchaser thereof under his contract to purchase the same, above referred to, and enable him thereby to preserve the corpus of his interest as such purchaser in the estate to await the determination of the controversy.

"And it further appeared by the uncontroverted testimony that if the gas were sold to any other than O. R. Seagraves for transportation through his pipe line when completed, such sale would result in the absolute destruction of the interest that said O. R. Seagraves had as purchaser of the gas from said lease in the profits and interests and estate resulting from a difference in the purchase price and the sale price of such gas; and the

said O. R. Seagraves further proffered and tendered to said defendant on said hearing that he was willing to pay to the receiver for the benefit of the plaintiff A. J. W. Heard the amount of royalties from his one-eighth of the gas under said lease in advance, if desired, until his pipe line should be completed and the taking of such gas could actually be begun, and protested to the Honorable John M. Green, defendant herein, against the sale of the gas at this time to any other purchaser thereof at five cents per thousand cubic feet as being destructive of his interest therein; and further protested against any order for the sale of the gas from said well whereby the sale thereof should be prolonged by any contract beyond the date of the trial of said causes on their merit at the next term of the District Court of Refugio County, Texas, which convenes in regular session on the 22d day of March, 1926, in order thereby to protect his estate as purchaser in said gas. That gas, under said tract of land, exists in large volume, and it is a very valuable right to plaintiff, O. R. Seagraves, to have the privilege of taking the same under his contract of purchase, should the main case finally be decided in his favor and his contract to purchase the gas upheld.

"But if the gas should be sold by the receiver at five cents per thousand cubic feet to the competing pipe line, known as the Houston Pipe Line Company, which is the evident purpose of the receiver, as shown by his report (hereto attached) to the Honorable John M. Green, defendant herein, then this interest and right of plaintiff Seagraves will be destroyed, in that the five cents per thousand cubic feet derived through such sale by the receiver will only be sufficient to pay the purchase price of the gas from the vendors thereof under the Seagraves contract with Pratt, above referred to.

"That notwithstanding the facts in evidence, and the proffer made by Seagraves to protect all parties to the suit pending the litigation in the sale and disposition of the gas, and thereby enabling him to protect his own estate, the defendant, the Honorable John M. Green, entered an order in vacation directing the receiver to make a test of the gas in the Smith well, and have it determined whether it was merchantable, and if found merchantable, to sell the same at his discretion to any person, and the sale and delivery thereof under the contract should continue as long as the receivership should last.

"And taking the report of the receiver, and the order of the court together, it further appears that the purport of such order is to authorize the receiver to contract for the drilling of

offset wells hereinafter referred to and pay therefor with gas at the rate of five cents per thousand cubic feet. This also was protested by the plaintiff herein to the extent that in order to protect his estate as purchaser in such gas, as hereinbefore shown, he offered in open court to purchase receiver's certificates at par bearing six and one-half per cent interest per annum, and with the sum so advanced by this plaintiff on the receiver's certificates the said offset wells should be drilled, thereby preventing total loss of this plaintiff's interest as purchaser in such gas which the receiver is so authorized by said report to use in drilling said wells, and in this connection the uncontroverted testimony shows that said wells will cost about $22,000 each to drill—in other words, that gas which to this plaintiff, in view of the construction of the pipe line contracted for by him will be worth at least two hundred and twenty thousand dollars, will be transferred to Houston Oil Company for approximately forty-four thousand dollars, in order to secure drilling of the wells, and this plaintiff is denied the right to advance the actual moneys necessary, secured by a lien on the gas at a most reasonable rate of interest and thereby effect the same result and protect himself as well as all other parties to the suit.

"That this order was made on the 6th day of January, 1926, at Cuero, Texas, in chambers, but by clerical error it is dated December 28, 1925, and a copy thereof is hereto attached, marked Exhibit 'A,' and made a part hereof.

"That by reason of the fact that receiverships are indefinite as to their duration, and that the line which this plaintiff has secured the construction of which will not be completed until March 1, 1926, he is unable to take and receive said gas at this time, and in that he cannot accept delivery thereof now; that the gas while in great volume under said leased premises, nevertheless has certain limitations as to its extent and quantity, as shown by the undisputed testimony on said hearing, and under the order of the defendant herein so made in vacation, said gas may all be taken from said tract of land during the period of receivership, and this plaintiff will entirely lose his interest and estate therein, as above set out, by reason of the sale of all of said gas at the market price of five cents per thousand cubic feet.

"This defendant further says that by the undisputed testimony in this case it appears that other gas wells in the field are not located close enough to the Smith well to draw gas from the Smith well or deplete its production, in that the Smith well is more than one thousand feet from any other well producing gas in the field, and this plaintiff stands ready to protect the interest

of all parties to the litigation by paying for the gas in such volume as is ratably proper, beginning March 1, 1926, whether the pipe line is completed or not, and meanwhile to protect the lessor A. J. W. Heard by paying to him, in advance, any reasonable royalties from said wells until the pipe line is completed, as shown by his proffer and tender of equity in court.

"This defendant further says that by the terms of said order the receiver was directed to drill two offset wells at or near the lines of said lease for the purpose of protection against withdrawals against two wells on adjoining lands, and, according to the undisputed evidence in this case on the hearing thereof, it will take between sixty and ninety days to complete said wells, and that within that period, this plaintiff will have completed the pipe line which he has secured the construction of, as above stated, and this appears from the uncontradicted evidence on said hearing, and this plaintiff protested to the court against the present sale of the gas from said two wells proposed to be drilled as offsets until the completion thereof, and at that date he will be ready to take the gas from said wells at the recognized and admitted market price, and will be enabled to protect his interest and estate therein to the extent of the profits which he would receive therefrom, and that it would be inequitable and unjust to direct the sale of the gas from said wells at this date through the competing pipe lines at the current rate as being destructive of this plaintiff's interest in the gas.

"That notwithstanding this fact, the defendant, the Honorable John M. Green, as shown by the order hereto attached, has directed the receiver to contract for the sale of the gas from said wells not yet drilled, and that the sale of the gas may be contracted for during the period of the receivership, and for the reason stated above under such order the entire corpus of the interest of this plaintiff in said gas under his purchase contract, should he prevail in the suit on its merits, would be destroyed, and he would be unable to derive any benefit should his right to said gas as such purchaser be maintained on trial on the merits of said causes.

"That as to this position of this plaintiff the defendant, Honorable John M. Green, declared that, under his order, that Seagraves would be protected in his sixty per cent interest at five cents per thousand cubic feet, but that as to his rights as a purchaser these were mere profits upon his contract and were not protected by the order of sale.

"This plaintiff says that the hearing was lengthy, and that he has directed the court's stenographer to prepare at once a

statement of the facts on said hearing; that he has no right of appeal therefrom, and that the receiver, under the order of the court, has notified this plaintiff that he will test the well tomor-row, being Tuesday, the 12th day of January, 1926, and there-after this plaintiff says that the receiver will proceed to con-tract for the sale of said gas during the period of this receiver-ship, and as appears from his report thereon to the Honorable John M. Green will sell said gas to the Houston Pipe Line Com-pany at the market price for the period of receivership not only from the well known as the Smith well, but from the two offset wells not yet drilled, and in any event has the right to do so under order of the court and while such sales are required to be reported back to the said John M. Green for approval, no hearing is allowed this plaintiff thereon by the order of said court.   This plaintiff says that he is unable to present here-with a statement of the facts had upon such hearing by reason of the fact that the court stenographer, O. P. Fowler, has not as yet completed the preparation, and that he has good reason to believe and fears that the receiver, under the order of the court, will proceed to make sale of the gas during the period of the receivership as soon as he has completed the test of such well known as the Smith well.   The undisputed evidence shows such test can be made and the merchantableness of the gas determined in not to exceed three hours.

"That if gas is sold or contracted to be sold by the receiver under the order of the court, as this plaintiff has every reason to believe will be done, and such contract of sale or sale of said gas is approved by the court (and this plaintiff is denied the right under said order to be heard in opposition thereto), his entire estate and interest in said gas as the purchaser thereof will be destroyed, and there will be nothing left for him to litigate over as such purchaser.

"Plaintiff further says that, according to the order of the court, such report of sale will be made to the defendant in vacation, and since the recognized market price of gas is five cents per thousand cubic feet and the defendant judge has already directed the sale of the gas for the period of the receivership, in all probability the Honorable John M. Green, as Judge of the District Court, will approve such sale without a hearing on the part of this plaintiff, and his interest and estate aforesaid will be confiscated, and he will have no remedy by appeal.

"This plaintiff will be able to file in this court a complete statement of the facts proven at such hearing, together with his

objections and exceptions, to the order of the court within ........ days from this date as this court may request in order that same may be reviewed by this court, or any Justice thereof; that the other defendants than the Honorable John M. Green and Murray, receiver, are joined herein as parties to the suits filed in the District Court of Refugio County that they may be advised of this application.

"That plaintiff says further:

"(1)    That in ordering the sale and transfer of said gas in vacation the defendant, Honorable John M. Green, as District Judge, acted without jurisdiction, in that only as court in term time could such sale be ordered to be made;

"(2)    That such sale under the statutes of this State cannot be confirmed by the District Judge, but only by the court in term time;

"(3)    This plaintiff says that by the order denying him the privilege of appearing and objecting to the report of the sale to be made by the receiver in this case, this plaintiff is denied one of the substantial privileges and rights awarded him under the law and in this instance such action of the defendant in this cause would constitute a taking of this plaintiff's property without due process of law.

"(4)    This plaintiff says that the order of the defendant on said hearing is inequitable and unjust and erroneous, and violative of the principle of equity in receivership cases that the corpus of the estate should be maintained intact as far as possible until the case shall be tried upon its merits, and under the order issued the estate of this plaintiff will, in all probability, be destroyed.

"This plaintiff, therefore, now seeks to have the order of the defendant herein reviewed by this court, and the only means whereby this may be done, as this plaintiff has no right of appeal, is by certiorari to the defendant herein.

"Wherefore, premises considered, this plaintiff prays that this Honorable Court, or any Justice thereof, as the case may be, to whom this petition is presented, immediately issue or direct to be issued to the defendant herein your most gracious writ of certiorari requiring of the defendant that he transmit or cause to be transmitted or certified the entire record of the proceeding upon which the hearing was had by transcript and statement of facts, and that such record be filed herein within ........ days from this date as this Court may determine in order that this Court may review the action of the defendant on said hearing,

and in this plaintiff prays that upon such hearing such order of the court be revised.

"This plaintiff further prays that pending the determination by this court of this cause on review that an order issue directly to the defendant herein commanding him to refrain from further proceeding with the sale, or contracting to sell through the receiver in this case, such gas in and under said lease, and that this notice issue by wire to the defendant.

"That in the revision of this order by this Court or any Justice thereof, plaintiff prays:

"(a)    That the order be reversed as beyond the jurisdiction of said Judge and void;

"(b)    That it be reversed as erroneous and confiscatory of this plaintiff's interest; or

"(c)    That such order be directed to be entered as under all of the facts and circumstances developed upon the hearing is equitable, and should have been entered by the defendant—in order to protect the interest of plaintiff herein, until the final determination of the cause; and for general relief.

"That an appropriate order may be entered protecting the equities and rights of all concerned, by permitting O. R. Seagraves to take the gas at five cents per thousand cubic feet beginning March 1, 1926, in such amount as is required under the statute and under the regulations of the Railway Commission of Texas governing withdrawal of gas through pipe lines, the said Seagraves to guarantee payment for same by bond to be approved by the defendant, John M. Green, or the receiver, P. A. Murray, and the said Seagraves to pay one-eighth of such amount monthly, in advance, for the benefit of the lessor, A. J. W. Heard, as tendered by him until such time as he actually begins the taking of gas through the pipe line now being constructed, and requiring the said Seagraves by bond to protect such one-eighth royalty whether he is ready to receive said gas or not, and to enter such other order as this Court may deem equitable in the premises.

"In the alternative, this applicant prays the issuance of an alternative writ of mandamus, commanding the Honorable John M. Green, District Judge, aforesaid, to appear on a day fixed by the Court and show cause, if any he has, why he should not refrain from the sale of said gas, or the bartering thereof, for the drilling of the offset wells in the manner authorized by the order of January 6, 1926, and that on such hearing such mandamus be made peremptory and permanent.

"Further, that this Honorable Court forthwith issue to the said

Honorable John M. Green, District Judge, and P. A. Murray, receiver, a writ of injunction or prohibition, restraining the sale or barter or such gas until the final disposition of this cause herein.

"Said applicant further prays for all other further and different relief to which he may be entitled under the rules of law or equity."

A transcript showing the evidence introduced at the hearings was subsequently filed by Seagraves.

### OPINION.

Actual and potential jurisdiction of the Supreme Court is granted, in the terms of Sec. 3, Art. 5, of the Constitution. Such powers as are there absolutely delegated may, of course, be exercised without regard to "statutory omissions or declarations." Cleveland v. Ward, 285 S. W., 1063, 1068. In respect to such contingent grants as are there made, we apprehend there is a like immunity from legislative diminution or enlargement of such conditions as are specifically named.

Two classes of power, each *sui generis*, are provided for in Sec. 3, Art. 5. There is an appellate jurisdiction which, except as "otherwise provided for by law," extends to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, "under such restrictions and regulations as the Legislature may prescribe." Under the regulations and restrictions now embodied in the statutes the bringing of a case to a Court of Civil Appeals on appeal or by writ of error is an indispensable prerequisite to exercise of appellate jurisdiction by the Supreme Court. Art. 1728, R. S., 1925.

And there is an original jurisdiction to issue the writs of quo warranto and mandamus (except as against the Governor) "in such cases as may be specified" by the Legislature therefor.

Ancillary to and in aid of the proper use of either of the powers just mentioned, it is declared (Sec. 3, Art. 5) that the Supreme Court and the Justices thereof may issue "the writs of mandamus, procedendo, certiorari, and such other writs as may be necessary to enforce its jurisdiction," and, also, that the court shall have power "to ascertain such matters of fact as may be necessary to the proper exercise of its jurisdiction."

The petition before us does not disclose a case in which appellate jurisdiction, *in sui generi,* may be exercised, for lack of appeal directly or by writ of error precludes existence of a subject-matter. Nor does it exhibit a case for jurisdiction in

aid of appellate jurisdiction, for nothing is made to appear which, if left uncorrected, will destroy or impair the right of appeal. If relief is to be given, it must be given in the exercise of original jurisdiction.

That receivership was a proper *ad litem* remedy in virtue of statutory provisions (Arts. 2293-97, R. S., 1925) is plain. No attack is made upon the appointment or the placing of the *res in custodia legis*, except, it is said, no suit had been filed at the time those orders were made—and the record shows otherwise. The nature of the property and appurtenant rights and the conditions by which the property is circumstanced are *indicia* of a considerable discretion in its management, operation, etc., under directions, and potential jurisdiction included authority to give appropriate directions to the receiver.

That jurisdiction was properly invoked by or against each of the parties down to the point of giving the directions, or that all of the parties and the general subject-matter were under the active jurisdiction of the court, cannot be doubted. With the matter thus situated, it was competent for the parties by consent to authorize the District Judge, in vacation, to "exercise all powers, make all orders and perform all acts as fully as in term time." Art. 1915, R. S., 1925. Upon the record now presented, jurisdictional consent was given (Pecos & N. T. Ry. Co. v. Cox, 105 Texas, 40, 143 S. W., 606), and the proceedings in vacation were in general lawful. This being true, the disposition of the matters then presented to the District Judge and the nature and extent of the directions to be given as a result of the proceedings necessarily involved use of the judicial discretion vested in him by the Constitution and statutes. In such a case, and to the extent that such discretion is employed, the Supreme Court may not exercise original jurisdiction to impose its own judgment. State v. Morris, 86 Texas, 226, 24 S. W., 393. To the extent mentioned, the orders about which complaint is made were not void; they may have been improvidently granted or otherwise erroneous and, so, voidable, but their correction, if needed, must come through procedure foreign to a prayer invoking the original jurisdiction of the Supreme Court.

Some of the directions given in the orders, however, are nullities. As to them, the receiver must act at his peril (Lyons-Thomas Hardware Co. v. Stove Co., 88 Texas, 468, 486, 27 S. W., 100), and action against him and his sureties would afford petitioners some relief. Ultimately, relief against them could be secured through appeal, but the relief, thus secured, would be

tardy, and, in the meantime, irreparable injury might well result. The possibilities of relief otherwise, under the circumstances, do not preclude use of the original jurisdiction of the Supreme Court. Gulf, C. & S. F. Ry. Co. v. Muse, 109 Texas, 352, 207 S. W., 897, 4 A. L. R., 613; 11 C. J., pp. 112, 113, 116.

The directions now in mind are nullities because they involve attempts to delegate to the receiver the exercise of discretion and power which, essentially, is judicial, and because (with immaterial exceptions) the judicial power of the State is lodged, in a non-delegable way, in the courts and judges thereof by Art. 5 of the Constitution and the relevant statutes. Kilbourn v. Thompson, 103 U. S., 168, 190, 192, 26 L. Ed., 377; 15 R. C. L., 521, and authorities there cited.

In numbered paragraph 2 of the orders the receiver is directed to make a test of Well No. 1, and "in the event that said test determines, in the opinion and discretion of the receiver, that said gas is merchantable," etc., etc., it is provided that "then the receiver is hereby authorized and empowered to contract for such length of time as he deems proper for the sale of said gas to any litigant, or other person not a litigant," etc. In the third numbered paragraph it is ordered that "if it should be determined by said receiver, upon said test * * * that the taking of gas from this well in merchantable quantities might likely prove of injury to the leased premises," etc., the "receiver is authorized and directed to employ such method and means he may deem best to kill said well." If the receiver, in the exercise of the discretion thus given, determines to destroy Well No. 1, he is authorized (in said paragraph) "to drill, or cause to be drilled, another well in the near vicinity of this present well, and again he is given the fullest latitude and discretion as to location and methods or terms or provisions of any contracts he may enter into, in such regard, and as to methods of repayments for said work, either of killing said old well or of drilling said new well in its place." The things thus left to the discretion of the receiver are authorized to be done by him without further consultation with or approval or direction of the court or judge. Manifestly, if he should use his discretion in respect to destroying Well No. 1, and should destroy it, its value would disappear, and, thus, the condemnation of very substantial property belonging to the litigants, or some of them, would be decreed, and the decree would be executed, by a person who is not a judge and who has no constitutional authority to adjudicate rights. Likewise, the matter of expenditure of several thousands of dollars,

or the incurring of liability therefor, is left to the discretion of the receiver; he may or may not, accordingly as is his will, thus permanently burden or leave free of burden the property whose custody is in him for a short time and for special purposes.

In numbered paragraph 1 of the orders the receiver is authorized to drill or cause to be drilled on the land involved two wells (other than the one provided for in paragraph 3). The receiver is there "given fullest latitude as to whether or not to put down these wells by employes of the receiver, or under contract with some other person" and only in case he shall decide to contract with "some other person" for drilling the wells is he required to submit such "contracts" to "the court for the court's approval." In the event of the making of such contracts and their submission to the court for approval, it is provided that "no hearing need be had thereon." Thus, the receiver is authorized to decide a question in a way which would deprive the court of an opportunity to perform its statutory and constitutional duty to direct what acts shall be done "respecting the property" (Art. 2297, R. S., 1925) in advance of the doing of those acts. If the two wells shall be drilled, whether by employes of the receiver or by a contractor, a very substantial portion of the corpus of the estate may be consumed—certainly encumbered—thereby. If the property be in such condition as that drilling of the wells is proper, the court, or judge acting under proper conditions, should decide the matter thus left to the discretion of the receiver.

In our opinion, the questions of substantial property rights thus confided to the judgment of the receiver are questions whose solution requires use of the judicial function (Art. 2297), and the effort to delegate power to decide them in *coram non judice*.

We do not particularly notice the declaration that "no hearing need be had" in respect to the contracts mentioned in numbered paragraph 1, except to say that if the right to a hearing be seasonably claimed in respect to any question materially affecting the rights of the parties and thereupon denied, absence of due process would be patent.

While mandamus, in general, is a remedy whereby a person or officer is required to do something which he wrongfully declines to do, nevertheless in exceptional cases it may properly be given a restraining effect. (Bacon's Abr., tit. "Mandamus" let. D, 273; Ex Parte Bradley, 7 Wall., 364, 19 L. Ed., 214, 219) or one of reversal or amendment of a previous act (see Ex Parte Secombe, 19 How., 13, 15 L. Ed., 565; Virginia v. Rives,

100 U. S., 313., 25 L. Ed., 667; Cook v. Yett, 115 Texas, 175, 268 S. W., 715, and authorities there cited.)

It is our opinion that an order wherein judicial discretion is not exercised by the tribunal or officer to whom it has been solely confided by law, but in which use of that discretion is delegated to a non-judicial officer, affords such an exceptional case.

Accordingly, we recommend that the appropriate order be entered requiring the respondent, Hon. John M. Green, District Judge, to cause the receiver, Hon. P. A. Murray, to refrain from exercising the authority purportedly given in numbered paragraphs "First," "Second" and "Third" in respect to the destruction of said "Well No. 1" and in respect to the drilling of each and all of the other wells therein mentioned.

And because, in our opinion, the other terms of said orders involved exercise by the District Judge of the judicial discretion vested in him by law, and the proceedings in respect thereto are not shown to be void, we recommend that all relief now prayed there against be denied.

The opinion of the Commission of Appeals is adopted, and judgment in accordance therewith.

*C. M. Cureton,* Chief Justice.