## PATTON v. POWELL.

No. 13349.

Court of Civil Appeals of Texas.
Fort Worth.

March 27, 1936.

Rehearing Denied May 8, 1936.

Rice M. Tilley, of Fort Worth, W. E. Monteith, of Houston, and Black & Graves, of Austin, for appellant.

Ernest May, of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

As shown in the opinion of this court in La Rue Holding Company v. Essex, reported in 45 S.W.(2d) 319, there were two receiverships of an oil lease on what is known as the G. W. Eaton farm in Rusk

county, consisting of 146.97 acres of land, title to which stood in the name of Paul Vitek as trustee for numerous persons and corporations, and he was in control of the same as sole manager.

One of the wells on the lease, designated as well No. 5, caught fire, and Vitek was fatally burned from that conflagration. Following his death, and on July 16, 1931, the district court of Tarrant county appointed C. A. Gilliam receiver of the property, and on the same day the district court of Smith county appointed Earle Mayfield and John M. Stephens receivers of the same property. As shown in the opinion in that case, this court held that the appointment so made by the district court of Tarrant county took priority over that made by the district court of Smith county, by reason of the fact that the proceedings for appointment of a receiver were filed in the district court of Tarrant county first.

On March 31, 1932, the district court of Tarrant county appointed Ward B. Powell receiver to succeed C. A. Gilliam, who had resigned.

The record shows that Mayfield and Stephens, as receivers, continued in charge of the lease until March 23, 1932; that their final report was made to the district court of Smith county and approved, and they then turned over to Gilliam, the Tarrant county receiver, possession of the property, together with a report of receipts and disbursements by them and outstanding claims against the property.

This suit was instituted by H. L. Patton against Ward B. Powell, receiver, to recover $30,000 for his services in extinguishing the fire in well No. 5 on the lease after it had been burning for some two weeks, following repeated unsuccessful efforts of different ones to accomplish that result.

Plaintiff alleged that the Smith county receivers, acting through their authorized representative, G. W. Benninger, employed him to extinguish the fire, and contracted and agreed to pay him therefor the sum of $30,000. In the alternative, he alleged that his services were reasonably worth that sum, and he was therefore entitled to recover the same, even in the absence of a specific contract to pay that amount.

The case was tried before a jury and following are the special issues submitted, with the findings thereon:

"1. Do you find from a preponderance of the evidence that S. W. Benninger agreed on behalf of the receivers of Paul Vitek, Trustee, to pay plaintiff $30,000.00, if he succeeded in putting out the fire? Answer: Yes.

"2. In the event you answer the foregoing question in the affirmative, and only in that event, then answer:

"Do you find from a preponderance of the evidence that the receivers, Mayfield and Stephens, authorized the said Benninger to make such agreement, if you have found in answer to the preceding question that the same was made? Answer: Yes.

"3. Do you find from a preponderance of the evidence that plaintiff devised the plan of putting out the fire? Answer: Yes.

"4. Do you find from a preponderance of the evidence that the fire in question was put out under the direction of the plaintiff? Answer: Yes.

"5. If you have answered the foregoing question in the affirmative, and only in that event, then answer:

"What do you find from a preponderance of the evidence was the reasonable value of the services of the plaintiff on the occasion in question? Answer: $30,000.00. (Thirty Thousand Dollars)."

Special issue No. 17, requested by the plaintiff, R. L. Patton: "Do you find from a preponderance of the evidence that S. W. Benninger authorized H. L. Patton to proceed to put out said fire? Answer: Yes."

Plaintiff has appealed from the refusal of the trial court to grant his motion for a judgment in his favor for $30,000, in accordance with the findings of the jury and of the rendition of a judgment in defendant's favor non obstante veredicto, as prayed for in the following motion filed by the defendant:

"The defendant presents this his motion for a judgment non obstante veredicto for the following reasons:

"1. A directed verdict would have been proper in this case.

"2. The finding of the jury in response to special issue No. 2 has no support in the evidence.

"3. The answer of the jury to special issue No. 5 has no support in any competent evidence."

In appellee's briefs it is admitted that in testing the sufficiency of defendant's motion for judgment it must be assumed

that all findings of the jury, except on issues Nos. 2 and 5, have sufficient support in the evidence, but it is insisted that neither of those two findings are supported by competent evidence, and therefore the verdict as a whole was not a sufficient basis for a judgment in plaintiff's favor.

Earle Mayfield and John Stephens, the Smith county receivers, and also G. W. Benninger, each testified positively and unequivocally that neither of those receivers ever authorized Benninger to enter into any agreement on the part of the receivers to employ and pay plaintiff $30,000 or any other sum to extinguish the fire in question. Those witnesses further testified that Benninger's employment was as general superintendent, and his duties as such were to look after the production and operation of the wells.

Appellant has cited the following testimony in support of the jury's findings on issue No. 2: "Q. Who told you they would give you $30,000.00? A. Mr. Benninger, and Mr. Rowland and Barney Carter went in with him to get the deal all confirmed, and they came back and said that it was all right, rather see you make the money than anybody else."

On redirect examination Patton testified:

"Q. Mr. Patton, I believe you stated that after (correct me if I am wrong) that after you talked with Mr. Benninger about the $30,000.00 he said he was going in to see Mr. Stephens and Mr. Mayfield? A. Yes.

"Q. Did he come back and talk to you after that? A. Yes, sir.

"Q. What did he say? A. He told me it was all right, 'go right ahead and get your stuff together.' "

■ In the first place, that testimony of plaintiff as to what Benninger told him after he had gone in to see Stephens and Mayfield was hearsay and incompetent, especially in that the primary basis for such authority must be found in the written order of the court appointing the receivers and defining their powers, hereinafter copied. See 17 Tex.Jur. pp. 520, 521, and decisions there cited.

■ In the second place, the report to plaintiff by Benninger, to the effect that the receivers had authorized him in their behalf to make the agreement to pay $30,000 for his services if he succeeded in extinguishing the fire, was incompetent to prove agency to make such an agreement. It amounted to no more than a bare statement by Benninger that he had such authority.

"The rule that the declarations of an agent are incompetent to establish either the fact of agency or the scope of the agent's authority is so elementary that the citation of authority in support thereof is said to be unnecessary. * * * Proof of authority to make the statement is required to render it admissible, and it would be traveling in a circle to admit the declarations themselves as being such proof." 2 Tex.Jur. 523.

■ And the same conclusion is applicable with manifestly added force to the following testimony relied on to corroborate that referred to above, to wit: Plaintiff's testimony that Mayfield told him he would be willing to pay Bradford, one of plaintiff's helpers, his bill for about $25 or $35 and charge it against plaintiff's account; and testimony of John Rowland, another worker, that he told Mayfield of the plan devised by plaintiff and Carter, another worker, for extinguishing the fire, and Mayfield told him to tell them he would let them try it and for them to come to see him about it.

■ Nor was the issue of ratification of agency by the Smith county receivers submitted or requested, and was therefore waived. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. And the same may be said of the contention in appellant's briefs that the testimony showed that the Tarrant county receiver likewise authorized Benninger to make the contract to pay plaintiff $30,000 to extinguish the fire, as also alleged in plaintiff's petition.

■ Moreover, we are convinced that the general powers conferred upon the Smith county receivers by the order of court appointing them did not include authority to burden the property placed in their custody with an indebtedness of $30,000. And the proof showed without contradiction that no application was ever made to the district court of Smith county or of Tarrant county for special authority to make such a contract, and none was ever given, and the court never approved the same.

These are the powers given those receivers by order of the court appointing them: "That they immediately take physical possession, management and con-

trol of all of said assets and that they proceed at once to take and prepare in writing an inventory of all of said assets and report the same to this court showing a list of all assets and likewise a list of all liabilities and perform such duties as are necessary under the orders of this court."

■■ Our foregoing conclusion is well supported by the following authorities: Seagraves v. Green, 116 Tex. 220, 288 S.W. 417; Chicago Deposit Vault Co. v. McNulta, 153 U.S. 554, 14 S.Ct. 915, 38 L.Ed. 819; Missouri, K. & T. Ry. Co. v. McFadden, 89 Tex. 138, 33 S.W. 853; International & G. N. Ry. Co. v. Herndon, 11 Tex.Civ.App. 465, 33 S.W. 377; Hicks Rubber Co. v. Columbia Tire & Rubber Co. (Tex.Civ.App.) 252 S.W. 216.

"So well settled is the rule that a receiver has no authority to deal with or expend the trust property without the authorization or approval of the court that all persons dealing with a receiver are bound to take notice of the extent of and the limitations upon his authority, and so deal with him at their peril in so far as concerns the liability of the trust estate." 53 C.J. 158.

"A receiver being an officer of the court by which he is appointed, cannot delegate his duties to any other person." 53 C.J. 144.

"True, he could appoint agents and employ servants to aid him in the performance of his trust, but he could not delegate to such agents or servants authority which he did not himself possess." International & G. N. Ry. Co. v. Wentworth, 8 Tex.Civ.App. 5, 27 S.W. 680.

The record shows that Mayfield and Stephens were appointed receivers immediately after the death of Paul Vitek. The following testimony of Earle Mayfield was fully corroborated by that of his coreceiver, Stephens, and was not contradicted by any other witness:

"I was appointed receiver by Judge Walter G. Russell of the District Court of Smith County, and never at any time discussed with him the matter of employing Mr. H. L. Patton to extinguish the fire on well No. 5 on the Eaton lease.

"The receivers had no authority from the court to pay H. L. Patton, or anyone else, $30,000.00 or anything like that sum for extinguishing the fire. In fact, we had an order from the court to pay Walter Kidde & Company of New York the sum of $5,000.00 if this company succeeded in extinguishing the fire, and we also secured an order from the Court to pay Blackie de Longe the sum of $2,000.00 for the work he did in conditioning the well for Walter Kidde & Company. This is the only authority we had from the court to employ anybody in connection with extinguishing the fire on well No. 5, Eaton Lease.

"Q. Did you get any written authority from the court authorizing Barney Carter or anyone else to put out the fire? A. Had no written orders from the court authorizing us to contract with anyone to put out the fire except those heretofore mentioned."

■ As shown by plaintiff's own testimony, he was employed on the lease doing teaming work and hauling lumber for some time prior to the appointment of the Receivers Mayfield and Stephens, and Mr. Benninger was then superintendent of operations on the lease for Paul Vitek. He further testified he continued the same work under directions of Benninger after the appointment of those receivers, and he made unsuccessful efforts to collect from the receivers the $30,000 claimed for extinguishing the fire, and at the same time made a further claim for $2,700 for teaming services rendered while Paul Vitek was in charge of the lease, which he later discounted and was paid $1,700 by the receivers in full settlement of that claim; that he continued doing the same work until the fire was extinguished, and, on August 3, 1931, he and his associate Crowder were paid by the receivers $652 for the same character of work performed after the receivers were appointed.

Since Benninger was without lawful authority to bind the receivers by an express contract to pay plaintiff $30,000 to extinguish the fire, it follows that he could not bind them by an implied contract to pay the same sum as the reasonable value of the same service. Therefore the finding of the jury that his services were reasonably worth $30,000 could furnish no valid basis for a judgment therefor on plaintiff's plea of quantum meruit, even if it could be said that the testimony offered by plaintiff to prove such value was competent for such purpose, which we believe doubtful, but the determination of

which becomes unnecessary, in view of our foregoing conclusions.

From a legal standpoint, plaintiff's work in extinguishing the fire was that of a volunteer, for which he has no right of action. Hicks Rubber Co. v. Columbia Tire & Rubber Co. (Tex.Civ.App.) 252 S.W. 216.

Many decisions are cited by appellant in which it appeared that receivers were appointed by courts that had not acquired jurisdiction or had made appointments without proper grounds, and later the same properties were placed in receiverships by other courts having jurisdiction, and were there charged with costs and other expenses incurred by the first receivers. Among the decisions cited are the following: Ford v. Gilbert, 42 Or. 528, 71 P. 971, 972; Palmer v. Texas, 212 U.S. 118, 132, 29 S.Ct. 230, 53 L.Ed. 435; Northwestern Iron Co. v. Land & River Imp. Co., 92 Wis. 487, 66 N.W. 515, 517; Shell Petroleum Corporation v. Grays (Tex.Civ.App.) 87 S.W.(2d) 289; James v. Roberts Telephone & Electric Co. (Tex. Com.App.) 206 S.W. 933; Speakman v. Bryan (C.C.A.) 61 F.(2d) 430. In those cases the expenses in question were of comparatively small amounts, such as court costs and receiver fees for caring for the property, and were in fact incurred by the de facto receivers in charge of the properties, and were authorized by the courts appointing them, while in the present suit the alleged contract to pay plaintiff $30,000 was never authorized by the receivers or by the district court of Smith county who appointed them. Hence the cases cited are distinguishable from the case at bar on the facts. Notwithstanding the fact that the properties were turned over to the Tarrant county receiver, charged with all the legally incurred claims against it at the time, to impose such a claim on the property after the receivership in Smith county had been closed and the assets turned over to the Tarrant county receivers would open the door to every volunteer who had done something alleged to be beneficial to the estate while in the hands of the Smith county receivers, and would tend to prolong the closing of the receivership indefinitely.

All assignments of error are overruled, and the judgment of the trial court is affirmed.